UNITED STATES, Appellee,

v.

Gary WILSON, Private, U. S. Army, Appellant.

No. 40326.

CM 439668.

U. S. Court of Military Appeals.

June 28, 1982.

For Appellant: *Captain Edwin S. Castle* (argued); *Colonel Edward S. Adamkewicz, Jr., Major James F. Nagle* (on brief); *Lieutenant Colonel John F. Lymburner, Major Grifton E. Carden, Major Raymond C. Ruppert.*

For Appellee: *Captain Michael R. Smythers* (argued); *Colonel R. R. Boller, Major Robert B. Williams* (on brief); *Major Ted B. Borek, Major John T. Edwards, Captain Margaret R. LaFrance.*

## OPINION OF THE COURT

COOK, Judge:

Appellant, Private Wilson, was charged with one specification of rape, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920, and an unrelated specification of assault consummated by a battery, in violation of Article 128, UCMJ, 10 U.S.C. § 928. A military judge, sitting as a general court-martial, found Wilson guilty of the battery as charged and, by exceptions and substitutions, of indecent assault, in violation of Article 134, UCMJ, 10 U.S.C. § 934, instead of rape.[1] Before us, Wilson challenges only the correctness of his conviction of indecent assault.[2] Finding no deficiency, we affirm.

### I

Wilson was assigned to an infantry unit located near a small town in the Federal Republic of Germany. Because his unit spent a considerable amount of time in the field, and as a result of the relatively isolated nature of his environs, Wilson's access to female companionship was somewhat limited. By contrast, Wilson had a friend named Byas, who lived in Frankfurt, a large city with a correspondingly larger supply of available females. In addition, Byas lived in a "co-ed" barracks.

Once, when appellant and Byas were talking on the telephone from their respective units, Byas asked the victim, a service member who was walking down the hall, to speak to Wilson (apparently to demonstrate the plenitude of women at his location). The victim did so, briefly, and, by her account, thought nothing more of it. Wilson, on the other hand, developed a considerable interest in meeting the victim.

A short time later, he had his opportunity. Responding to Byas' invitation, Wilson came to Frankfurt for a weekend visit, arriving on a Friday night. The next day, Byas and Wilson encountered the victim in passing on several occasions. On each occasion, the victim spoke briefly with the two men, offering no particular encouragement. That afternoon, Byas and Wilson went into Frankfurt, stopping at several places, including a "strip joint." After viewing the performance, both men expressed a desire to "go to bed" with one of the entertainers.

Returning to the barracks, Byas again encountered the victim, this time as she was coming down a stairway. She had just left her boyfriend's room and was on her way to do laundry. Byas asked her to go to his room and talk to Wilson, who was in the room. The victim refused because her boyfriend was waiting for her and she had just come down to do her laundry. After considerable "nagging" by Byas, the victim agreed to talk to Wilson for a few minutes. At this point, the testimony becomes controverted.

The victim testified that she entered the room and struck up an idle conversation

---

1. The military judge sentenced appellant to a bad-conduct discharge, confinement at hard labor for 10 months, total forfeitures, and reduction to the grade of E–1.

2. We granted review of the following issue: WHETHER THE EVIDENCE IS SUFFICIENT, AS A MATTER OF LAW, TO SUPPORT THE FINDING OF GUILTY TO CHARGE I.
In addition, we specified the following issue: WHETHER THE FINDINGS OF THE MILITARY JUDGE BY EXCEPTIONS AND SUBSTITUTIONS ARE SUFFICIENT TO SUSTAIN A CONVICTION OF INDECENT ASSAULT.

with Wilson. After a few minutes, she announced that she had to go and got up to leave. At that point, Wilson rushed to the door and locked it, preventing the victim from leaving. There was a struggle; the victim screamed; and Wilson raped her. Somewhat later, but while Wilson was still on top of her, Byas came into the room. Crying, the victim called out to Byas for help. Byas initially ignored her; ultimately he came over to the bed and suggested to Wilson that he leave her alone. The victim was then permitted to get up and get dressed. Before she left, Byas apologized to her for his friend's behavior.

The victim immediately reported the incident in succession to her roommate, her boyfriend, and her best friend, Private First Class Roth. They described her variously as "very upset," "crying," "shaking," and "clutching a broken necklace." According to Roth, the victim "kept calling my name over and over again; and she was looking at the ceiling and the floor." Earlier, Roth had been talking in the hallway with Byas when she heard a scream coming from the direction of Byas' room. Byas denied having heard a scream. After listening for a few minutes and hearing nothing more, Roth disregarded it.

On their way to the military police station to report the incident, the victim, her boyfriend, and Roth were met by Byas, who asked them not to report the incident.

According to Wilson, he and the victim were having a conversation in Byas' room when he decided to turn the lights down. As he turned around, he noticed that the victim had moved to the bed. One thing quickly led to another, and they made love. The love-making ended when Byas entered the room with the news that the victim's boyfriend was looking for her. The victim jumped up, exclaimed "Damn" or "Oh Lord . . . What am I going to do now?," and left hurriedly—but not before kissing both men on her way out.

Byas corroborated Wilson's testimony in detail, adding that, at one point, he entered the room quietly (and apparently unnoticed by the lovers) to get some thread. While he did not see them in the dark or hear what they were saying, he could hear them talking in low voices. Later, Byas and Wilson were stunned to learn that the victim was going around accusing Wilson of raping her.

Thereafter, Wilson fled, jumping out the window, and was apprehended at the train station.

The incident occurred less than two months after the victim had arrived in Germany. The victim admitted having had sexual relations with three men, including her then boyfriend, within that time span. By the time of trial, her boyfriend had been transferred, and she had become intimate with a fourth man.[3]

The military judge entered a general finding of guilty to indecent assault. No special findings were requested, and none rendered. *Cf., Harris v. Rivera,* —— U.S. ——, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981).

II

■ Initially, appellant contends that the military judge's findings were so uncertain, ambiguous, and obscure as to violate due process of law, in that appellant does not know what he was convicted of. As modified by the military judge's findings, the specification states:

In that Private First Class Gary Wilson, a member of the United States Army, serving with Combat Support Company, 1st Battalion, 37th Armor, 1st Armored Division, APO New York, 09326 did, at Room 103, Building 403, Gibbs Kaserne, a military installation under the control of the United States Army, Frankfurt, Germany, a place outside the territorial lim-

---

**3.** The rules of evidence in existence at the time of appellant's trial permitted admission of evidence of a victim's "unchaste character." Para. 153b(2)(b), Manual for Courts-Martial, United States, 1969 (Revised edition). The new Military Rules of Evidence, applicable to courts-martial commenced after September 1, 1980, purport to restrict significantly the admission of evidence of the past sexual behavior of an alleged victim of a nonconsensual sexual offense. Mil.R.Evid. 412.

its of the United States, on or about 2015 hours, 20 January 1979, with the intent to gratify his lust by grasping her around the throat and attempting to remove her clothing to commit an indecent assault upon ... [the victim].

Neither appellant nor his counsel objected at trial to the form of the finding, nor did they request clarification.

As appellant notes, the word "to" appears incongruously between the words "clothing" and "commit." In addition, the words "commit an indecent assault upon" and "with the intent to gratify his lust" are in reverse position, according to model specification 128, Appendix 6c, Manual for Courts-Martial, United States, 1969 (Revised edition). We hold such defects to be insignificant. By any fair reading, the finding was sufficient to apprise appellant that he had been convicted of indecent assault and to protect him from subsequent prosecution for the same offense. *See United States v. Dilday*, 47 C.M.R. 172, 173 (A.C.M.R.1973); and *United States v. Scott*, 50 C.M.R. 630, 633 (C.G.C.M.R.1975). Accordingly, we hold that the form of the finding was sufficient.

### III

Appellant also contends that the evidence was insufficient to sustain the findings of the trial judge. An indecent assault is defined as "the taking by a man of indecent, lewd, or lascivious liberties with the person of a female not his wife without her consent and against her will, with intent to gratify his lust or sexual desires." Para. 213f(2), Manual, *supra*. Indecent assault has long been considered a lesser-included offense of rape. *United States v. Kluttz*, 9 U.S.C.M.A. 20, 25 C.M.R. 282 (1958); *United States v. Hobbs*, 7 U.S.C.M.A. 693, 23 C.M.R. 157 (1957); *United States v. Headspeth*, 2 U.S.C.M.A. 635, 10 C.M.R. 133 (1953).

The elements of indecent assault, as set forth in the Manual for Courts-Martial, are: (a) That the accused assaulted a certain female not his wife by taking indecent, lewd, or lascivious liberties with her person;

(b) that the acts were done with intent to gratify the lust or sexual desires of the accused; and

(c) that, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

Para. 213f(2), Manual, *supra*.

■ As we frequently note, this Court is limited in its review to questions of law. Article 67(d), UCMJ, 10 U.S.C. § 867(d); *United States v. Lowry*, 2 M.J. 55 (C.M.A. 1976). If there is some competent evidence in the record from which the fact finder could find, beyond a reasonable doubt, the existence of every element of the offense charged, we will sustain the findings against a challenge to the sufficiency of the evidence. *United States v. Taylor*, 21 U.S. C.M.A. 220, 44 C.M.R. 274 (1972); *United States v. Papenheim*, 19 U.S.C.M.A. 203, 41 C.M.R. 203 (1970). *See also United States v. Wilson*, 6 M.J. 214 (C.M.A.1979).

In the instant case, there was evidence presented that Wilson and the victim were not married; that Wilson grabbed the victim and wrestled her onto a bed; that he put his hands around her neck and choked her; that he threatened to kill her unless she submitted to his advances; that he attempted forcefully to remove her pants; that he intended to have sexual intercourse with the victim; and that the victim did not consent to be assaulted.

■ Contrariwise, it is contended that the acts of grasping the victim by the throat and attempting to remove her clothing do not constitute the taking of inherently indecent, lewd, or lascivious liberties. However, acts not inherently indecent, lewd, or lascivious may be rendered so by the accompanying words and circumstances. *United States v. Hobbs, supra*, at 700, 23 C.M.R. at 164.

■ Under these circumstances, the military judge was fully justified in finding that Wilson's conduct was indecent, lewd, or lascivious. Further, we have no difficulty in detecting competent evidence establish-

ing every element of the offense of indecent assault. Indeed, there is sufficient evidence present to sustain a finding of guilty to the offense of rape.

## IV

■ That being the case, the question is presented whether there was anything inherently inconsistent in the military judge's finding that appellant was not guilty of rape, but was guilty of indecent assault—particularly where, as here, both the victim and the accused acknowledged that intercourse had occurred.[4] We can find at least four separate levels upon which the military judge could legitimately have based such a finding. First, he might have concluded that the victim actually consented to having intercourse with appellant, while at the same time being satisfied that she did not consent to the initial assault. Next, a reasonable doubt might have been raised in the military judge's mind as to whether the victim actually consented to the intercourse, while no such doubt was raised as to her consent to indecent assault. Thirdly, the military judge might have concluded that Wilson was mistaken as to whether the victim actually consented to the sexual intercourse, while at the same time being satisfied that Wilson knew she did not consent to indecent assault. *See para.* 216*i*, Manual, *supra; United States v. Keeve*, 2 M.J. 290, 296–97 (A.F.C.M.R.1976), *reversed on other grounds*, 5 M.J. 396 (C.M.A.1978). *See also* 6 Am.Jur.2d, Assault and Battery §§ 60, 67. Finally, the judge might have entertained a reasonable doubt whether Wilson was mistaken as to the victim's consent to intercourse, while at the same time being satisfied that Wilson knew she did not consent to indecent assault.

Admittedly, on this record, we might well have concluded that appellant was guilty of rape as charged. However, we did not observe the witnesses and are not in the best position to evaluate their credibility. *United States v. Carmichael*, 21 U.S.C.M.A. 530, 45 C.M.R. 304 (1972); *United States v. Albright*, 9 U.S.C.M.A. 628, 26 C.M.R. 408 (1958). In any event, we are satisfied that there was nothing inherently inconsistent in the military judge's finding and that no error accrued to the prejudice of appellant.

The decision of the United States Army Court of Military Review is affirmed.

FLETCHER, Judge (concurring):

The military judge found appellant not guilty of rape. Accordingly, I must disassociate myself from any observations in the lead opinion concerning his probable guilt of that offense. Otherwise, I concur.

EVERETT, Chief Judge (dissenting):

The findings which the military judge made by exceptions and substitution obviously are incomplete. This in itself might not cause great concern, but when these findings are considered against the backdrop of the evidence at trial, I conclude that some remedial action is required.

Appellant was charged with rape. According to his testimony and that of the alleged victim, sexual intercourse took place. Thus, the only issue remaining as to guilt of rape concerned the absence of consent; so it is difficult to understand how the military judge found that an indecent assault occurred but did not find that there had been a rape. Indeed, if the case had been tried by members, we probably would have ruled that the judge had no obligation to instruct on indecent assault as a lesser included offense because it was not reasonably raised by the evidence.[1]

---

4. An inconsistent verdict is not usually a cause for relief. *See United States v. Jackson*, 7 U.S.C.M.A. 67, 21 C.M.R. 193; *United States v. Phillips*, 14 U.S.C.M.A. 620, 34 C.M.R. 400. The reason for the rule is that the court-martial may merely have given the accused "a break."
*United States v. Lyon*, 15 U.S.C.M.A. 307, 313, 35 C.M.R. 279, 285 (1965).

1. The majority opinion has some obvious—and drastic—implications in the instructional area. The reasoning used here by the majority will require instructions to court members on lesser included offenses that heretofore would not have been viewed as reasonably raised by the evidence.

The majority opinion suggests four routes by "which the military judge could legitimately have" arrived at his findings. 13 M.J. 247, 251. To me, it appears unlikely that, in fact, he followed any of them, since all four alternatives require acceptance of an implausible scenario, not argued at trial by any of the parties. In view of the evidence in the record, the possibility is remote that the victim did not consent to an initial indecent assault by appellant but as part of the same transaction acceded to sexual intercourse with him. Likewise, under the circumstances revealed in this record, Wilson could hardly have made a reasonable mistake of fact that the victim consented to intercourse without also making an equally reasonable mistake in believing that she consented to the preceding physical contacts. I recognize that a woman may consent to sexual intercourse but not consent to various acts which have accompanied it—especially if those acts follow intercourse and are deviant in nature. On the other hand, in the situation involved in the present case, there is, at most, an infinitesimal likelihood that the woman opposed the actions which preceded and led up to intercourse, but then freely gave her consent to intercourse itself.

When court members convict an accused of an offense not reasonably raised by the evidence, *cf. United States v. Waldron,* 11 M.J. 36 (C.M.A.1981), no procedure is readily available to discover the rationale for their action. Fortunately, we are not restricted in the same manner in determining how a military judge arrived at his findings. When "an appreciable risk exists that the judge's findings of guilt were tainted by application of an erroneous legal standard," remand to the original judge for further findings may be in order. *See United States v. Roa,* 12 M.J. 210, 213 (C.M.A.1982).[2] Such a remand should be ordered by us in the case at bar. In that way, we can know—rather than speculate—why the judge made his findings.

2. Usually a military judge has no duty to make special findings absent a request at trial that he do so. *United States v. Gerard,* 11 M.J. 440, 443 (C.M.A.1981) (Everett, C. J., concurring).

Obviously, the absence of a request does not impose any limitation on our power to remand for additional findings.