**UNITED STATES, Appellee,**

v.

**Specialist Kenneth L. PIERCE, 253–29–2325, United States Army, Appellant.**

**ACMR 9202428.**

U.S. Army Court of Military Review.

10 June 1994.

For Appellant: Captain Michael E. Smith, JAGC, Captain Silas R. DeRoma, JAGC (on brief); Captain Silas R. DeRoma, JAGC (argued specified issues); Major Michael A. Egan, JAGC (on specified issues brief).

For Appellee: Colonel Dayton M. Cramer, JAGC, Lieutenant Colonel Richard A. Cefola, JAGC, Major Timothy W. Lucas, JAGC, Captain David G. Tobin, JAGC (on brief), Captain Gregory T. Baldwin, JAGC, Captain Joel B. Miller, JAGC (argued specified issues); Major James L. Pohl, JAGC (on specified issues brief).

Before GRAVELLE, JOHNSTON, and BAKER, Appellate Military Judges.

## OPINION OF THE COURT ON RECONSIDERATION

BAKER, Judge:

Contrary to his pleas, the appellant was convicted by a military judge sitting as a general court-martial of rape in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (1988) [hereinafter UCMJ]. He was sentenced to a dishonorable discharge, confinement for four years, total forfeitures, and reduction to Private E1. The convening authority approved the adjudged sentence.

In an opinion dated 10 December 1993 we set aside the findings and sentence in this case and dismissed the charge. The govern-

ment filed a Petition for Reconsideration and Suggestion for En Banc [sic] on 24 January 1994. The appellant filed a response on 31 January 1994. After considering the petition and the response, we determined to grant the government's request for reconsideration. Our reconsidered opinion was not issued, however, as the full court opted to consider the suggestion for reconsideration en banc. Subsequently, after specifying issues and considering briefs and oral argument, the full court determined not to adopt the suggestion for reconsideration en banc. *United States v. Pierce*, 40 M.J. 584 (A.C.M.R.1994). We still consider it appropriate to reconsider our decision, and do so now in accordance with Rule 19, Joint Court of Military Review Rules.

The appellant contends, personally and through counsel, that the evidence in this case is both legally and factually insufficient to support a conviction for rape. We agree to the extent we find the evidence not factually sufficient to support the appellant's conviction. We are simply not convinced beyond a reasonable doubt that the appellant was not mistaken as to the prosecutrix's lack of consent to sexual intercourse. Nor are we convinced beyond a reasonable doubt that the appellant was not mistaken as to the prosecutrix's lack of consent to lesser included offenses.

## I. Factual Background

All but the ultimate facts in this case are uncontroverted. Specialist (SPC) M was twenty-two years old and had been in the Army for approximately four years in August 1992. She and the appellant, also a Specialist, were fellow students at the Primary Leadership Development Course (PLDC) at Fort Carson, Colorado, and were both unmarried. Along with about thirty other PLDC students they failed an initial physical training test and were required to remain in the barracks over the weekend and sign in hourly. On Saturday, 15 August 1992, they ate dinner together and discussed plans to play cards with a group of students later that night.

At SPC M's initiative, the two soldiers met in the appellant's barracks room to study, polish boots, and talk while waiting for the card game to start. The visit was initially amicable. After about an hour, he asked her if she would like to have sex with him. She responded, "I don't think so." He then attempted to kiss her. She averted her head, gathered her things, and stood up. He then locked the door by turning the inside latch, shut off the lights, and walked towards her. She backed up to a bed in the farthest corner of the room and sat down. He followed and, as she scooted back on the bed, lay on top of her.

At this point, SPC M told the appellant, "Don't do it—whatever you're thinking about doing." He stated that all he wanted was a kiss and again tried to kiss her. Again she averted her head, at the same time reminding him that they had to sign in. He persisted in his attempt to kiss her and began rubbing between her legs with his hand. She told him to stop and, again, that they had to sign in. Nevertheless, he began to tug at her sweatpants in an attempt to pull them down. She held on to the waistband but, after a few minutes, he was able to pull them down. She continued to tell him not to do what he was doing, to stop, and that they needed to sign in. She squirmed and wiggled but felt she "could not get out from under him."

At some point, the appellant said, "Kiss me and I'll come." SPC M testified that, "at one point, I did—I returned his kiss, thinking that that's all he wanted and that, after I kissed him, I could just get up." She further stated, "It was not a quick peck; but it certainly wasn't passionate. We—we both used our tongues. I didn't at first, and then, I gave in to it, and—hoping that I was going to get up."

At about 9:00 P.M., Sergeant (SGT) Mims, a fellow PLDC student and the appellant's friend, knocked on the door and said it was time to sign in. The appellant responded that he would "be there" in five minutes. SPC M said nothing. Shortly thereafter, after telling SPC M, "[i]t would be so easy to fall in love with you," he placed his hands under her buttocks and initiated sexual intercourse.

After intercourse, the appellant got up and went to the adjoining bathroom. At the same time he asked SPC M to wait for him so they could sign in together. At that point, she could have departed but she did not. When he came out, she was visibly upset. He asked, "What's wrong?" She replied, "That's fucked up, what you did." He responded, "I hope you don't hate me." Together, both soldiers went downstairs and signed in with the PLDC Charge of Quarters. She made no complaint at that time.

After returning to her own room, SPC M became emotionally distraught and physically ill. Eventually, when her friends saw that she was upset, she reluctantly disclosed what had happened. At about the same time, the appellant had a conversation with SGT Mims, who had observed SPC M crying. The appellant acknowledged having sexual intercourse with SPC M. In response to a direct question, "Did you rape her?," the appellant responded, "No, I don't think I did," and also, "Well, at first, she was a little resistant, and I did it anyway, and she gave in."

There is no indication in the record of trial that the appellant was larger or in better physical condition than SPC M.[1] They were equals in rank and position. At no point did he display a weapon, strike, or verbally threaten her. At no time did she strike him. Nor did she scream or call for assistance, despite her knowledge that there were other PLDC students in the barracks. When asked why she had said nothing when SGT Mims came to the appellant's door, she stated that, "I wanted to, and I opened my mouth to; but nothing came out."

## II. Discussion

■ This court's test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

■ We have little hesitancy in concluding that the evidence in this case is legally sufficient for conviction. The evidence establishes beyond any doubt that the appellant had sexual intercourse with SPC M and that she was not his wife.[2] Considered in a light most favorable to the prosecution, it establishes that the act of sexual intercourse was by force and without SPC M's consent. It is also sufficient, as a matter of law, to establish that the appellant was not mistaken as to SPC M's lack of consent.[3]

■ Unlike most appellate courts, Courts of Military Review must test not only for legal sufficiency but also for factual sufficiency. Article 66, UCMJ, 10 U.S.C. § 866. Testing for factual sufficiency requires that, after weighing the evidence and making allowances for not having personally observed the witnesses, we determine whether we are ourselves convinced beyond a reasonable doubt of guilt. *United States v. Turner*, 25 M.J. 324 (C.M.A.1987). This includes determining whether we are convinced beyond a reasonable doubt that any defenses in issue did not exist. *See* Rule for Courts–Martial 916(b) [hereinafter R.C.M.].

■ The "mistake of fact" defense is specifically recognized in R.C.M. 916(j). A threshold question in a rape case is whether mistake of fact is even raised. The requirement is for "some" evidence of mistake, which may consist of evidence presented by the defense, the government, or through questions asked by the trial judge or court members. R.C.M. 916(b) (discussion). Al-

1. Personnel records admitted during the sentencing phase of the court-martial indicate the appellant was 5′5″ tall and weighed 141 pounds.

2. On 23 October 1992 Congress deleted language in Article 120, UCMJ, requiring that the act of sexual intercourse be with a female not the wife of the accused. Pub.L.No. 102–484, 106 Stat. 2506 (codified as amended at 10 U.S.C. § 920 (1993)). Although trial in this case took place on 13 November 1992, the pre–23 October 1992 version of the statute was applicable.

3. The military judge documented both his findings of fact and his ultimate conclusions in detailed special findings, prepared after he agreed to a post-trial defense request that he reconsider his findings. Those findings and conclusions are attached as an appendix to the opinion of the full court in this case. *United States v. Pierce*, 40 M.J. 584 (A.C.M.R.1994) (en banc).

though the appellant did not testify in this case,[4] we find that his comments acknowledging sexual intercourse but denying rape and indicating "she gave in" raise the possibility of mistake of fact. *See United States v. Sellers*, 33 M.J. 364, 368 (C.M.A.1991).

In our view, the appellant's comments to SPC M after intercourse and to SGT Mims later that night reflect surprise with her discomfort. This may have been feigned, but could just as well have been honest. While we agree with most of the military judge's special findings, we do not agree that the appellant's comment that he hoped SPC M would not hate him indicates he knew consent was lacking. This comment could have indicated that he now understood that he had taken advantage of her through seduction—that he knew he was no gentleman. More importantly, the issue is not whether he knew, after the fact, that consent was lacking but whether he knew, at the time of intercourse, that consent was lacking. In the absence of other evidence on this issue, we are not convinced beyond a reasonable doubt that the appellant was not under the mistaken belief that SPC M was consenting.

Since mistake as to lack of consent goes to an element requiring only general intent or knowledge, the mistake "must have existed in the mind of the [appellant] *and* must have been reasonable under all the circumstances." R.C.M. 916(j) [emphasis supplied].[5] It follows that, notwithstanding an honest belief that there was consent, the mistake of fact defense is not complete if that belief was unreasonable. *See United States v. Yarborough*, 39 M.J. 563, 564 (A.C.M.R. 1994) (mistaken belief an intoxicated 13–year old was consenting to intercourse, even if honest, was unreasonable).

Evidence of force and violence is particularly relevant in determining the reasonableness of mistake in a rape case. Constructive force, based on disparity of rank or position, may be a consideration in this regard. *See United States v. Clark*, 35 M.J. 432, 435

(C.M.A.1992). In this case there was no constructive force. In addition, actual force was minimal. The government offered no evidence of physical or psychological injury and the military judge specifically noted that the appellant did not verbally threaten SPC M or strike her. Some of the evidence of force, e.g. pulling down SPC M's sweatpants and lying on top of her, was only incident to sexual intercourse. Indeed, the appellant was more persistent than forceful. His ability to achieve his objectives with only incidental force is some evidence that a mistaken belief that SPC M was consenting would not have been unreasonable.

How lack of consent is manifested is also important on the issue of whether a mistake could have been reasonable. We are mindful that the military judge had the opportunity to see and hear SPC M before he concluded that she did not consent to sexual intercourse with the appellant and that he specifically found her to be a candid and credible witness. Nevertheless, the Manual for Courts–Martial provides that consent can be inferred when a "woman in possession of her mental and physical faculties fails to make her lack of consent reasonably manifest by taking such measures of resistance as are called for by the circumstances ... [unless] resistance would have been futile ... [or] is overcome by threats of death or great bodily harm, or where [there is inability] to resist because of the lack of mental or physical faculties." Manual for Courts–Martial, United States, 1984, Part IV, para. 45c(1)(b). Lack of consent can, of course, be proven despite this inference and we accept that SPC M did not consent. Nevertheless, SPC M's not doing more to make her lack of consent manifest, particularly not yelling out when SGT Mims came to the door, could have led to an inference of consent and is additional evidence that a mistake by the appellant would not have been unreasonable.

We recognize that SPC M made repeated attempts to stop the appellant's advances.

---

4. We are mindful that the appellant's choice not to testify cannot be held against him.

5. Despite any inference to the contrary in this language, the appellant does not have the burden of proving he was mistaken. Rather, once the

defense of mistake of fact is raised by the evidence, the government has the burden of proving that it does not exist, beyond a reasonable doubt. R.C.M. 916(b).

However, some of her statements and actions could have been perceived as equivocal—expressing hesitancy or reluctance as opposed to lack of consent. Even her squirming to get out from under the appellant could have been subject to different interpretation. We find it particularly significant that, despite her initial reluctance, she not only acquiesced to but also actively participated in French kissing, albeit after appellant's overtures that he would "come" if she did so. While this participation was certainly no "green light" to sexual intercourse, it could have suggested the possibility of eventual consent, or at least acquiescence, to the appellant—indicating that his repeated overtures and persistent efforts to sexually arouse and seduce SPC M were working. While a contrary inference is certainly possible, this evidence, combined with evidence discussed in preceding paragraphs, keeps us from concluding beyond a reasonable doubt that a mistake as to lack of consent would have been unreasonable.

### III. Conclusions

Given the totality of circumstances of this case as contained in the record of trial, we are not ourselves convinced beyond a reasonable doubt that the appellant is guilty of rape. Accordingly, the evidence fails this court's test for factual sufficiency. It is important to note that we have by no means concluded that SPC M consented to sexual intercourse. Rather, we have an honest and conscientious doubt, suggested by the evidence and lack thereof, that the government has disproved the defense of mistake of fact, a defense we find to have been raised by the evidence in this case. We are confident that the trial judge considered this issue and was convinced there was no mistake. Article 66, UCMJ, requires, however, that we not merely defer to the decision below. Instead, we must ourselves weigh the evidence and determine controverted questions of fact recognizing that the trial court saw and heard the witnesses. *See United States v. Irvinspence,* 39 M.J. 893 (A.C.M.R.1994).

We have carefully considered whether lesser included assaultive offenses have been proven in this case. We recognize that a reasonable fact finder could legitimately find indecent assault or other lesser included offenses on the facts before us. *See United States v. Watson,* 31 M.J. 49 (C.M.A.1990) and *United States v. Wilson,* 13 M.J. 247 (C.M.A.1982). Merely kissing a person against that person's will may, in some circumstances, constitute assault and battery. *See United States v. Sever,* 39 M.J. 1 (C.M.A. 1994). However, mistake of fact is also a defense to the lesser included offenses we have considered. *Watson,* 31 M.J. at 53. On the facts before us we are simply not convinced beyond a reasonable doubt that the appellant was not honestly and reasonably mistaken as to SPC M's lack of consent to intercourse and to the activities leading up to intercourse. We find Chief Judge Everett's dissent in *Wilson* particularly instructive in this regard: "Wilson could hardly have made a reasonable mistake of fact that the victim consented to intercourse without making an equally reasonable mistake in believing that she consented to the preceding physical contacts." *Wilson,* 13 M.J. at 252. We note that the *Wilson* majority only tested for legal sufficiency. We, on the other hand, must also test for factual sufficiency. *See United States v. Webster,* 37 M.J. 670, 684 (C.G.C.M.R.1993) (Baum, C.J., dissenting).

The findings of guilty and the sentence are set aside and the Charge and its Specification are dismissed.

Senior Judge GRAVELLE and Judge JOHNSTON concur: