# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Senior Airman JOSE H. GALLEGOS
### United States Air Force

## ACM 38738 (f rev)

## 4 January 2017

Sentence adjudged 5 September 2014 by GCM convened at Ellsworth Air Force Base, South Dakota. Military Judge: Lyndell M. Powell.

Approved Sentence: Bad-conduct discharge, confinement for 14 days, and reduction to E-2.

Appellate Counsel for Appellant: Major Jeffrey A. Davis.

Appellate Counsel for the United States: Lieutenant Colonel Roberto Ramirez and Gerald R. Bruce, Esquire.

Before

DUBRISKE, J. BROWN, and C. BROWN
Appellate Military Judges

OPINION OF THE COURT
UPON FURTHER REVIEW

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

DUBRISKE, Senior Judge:

Contrary to his plea at a general court-martial, Appellant was convicted by a panel of officer and enlisted members of one specification of abusive sexual contact in violation of Article 120, UCMJ, 10 U.S.C. § 920. Appellant was acquitted of a second specification of abusive sexual contact, along with two specifications of sexual assault by causing bodily harm. All of the specifications alleged against Appellant related to his conduct with a civilian, JG, one evening in Appellant's dormitory room.

Appellant was sentenced to a bad-conduct discharge, 14 days of confinement, and reduction to the grade of E-2. The convening authority approved the sentence as adjudged.

Appellant initially submitted three assignments of error: (1) the evidence is legally and factually insufficient to support his conviction; (2) the military judge erred in admitting evidence during sentencing about the impact of the court-martial process on the victim; and (3) the sentence is inappropriately severe. We also specified an issue related to an erroneous statement in the staff judge advocate's recommendation. After receiving briefs on this specific issue, we returned the record of trial for new post-trial processing and convening authority's action. *United States v. Gallegos*, ACM 38738, unpub. op. at 3 (A.F. Ct. Crim. App. 31 March 2016).

The convening authority again approved the sentence as adjudged after Appellant's submission of additional clemency matters. Appellant has not identified any error based on this additional round of post-trial processing, so the case is now before us for further review to address Appellant's original assignments of error. We now affirm.

*Background*

Appellant and JG met in 2012 through a mutual friend. Over the course of the next six months, Appellant and JG regularly socialized with a group of friends at an off-base hookah lounge. Appellant informed JG that he was interested in a romantic relationship with her and routinely showed his affection for JG by holding her hand or placing his hand on her leg. Appellant and JG were seldom alone, so the majority of Appellant's actions towards JG took place in public and were witnessed by their group of friends. Appellant also attempted to kiss JG on multiple occasions. JG advised she did not reciprocate Appellant's affection as she was not interested in a romantic relationship with him at that time.

Appellant and JG had limited contact during 2013 as they were both involved in relationships with other individuals. In January 2014, however, JG contacted Appellant through social media. JG had recently broken up with her boyfriend, and was in the midst of another potentially failed relationship, so she reached out to Appellant to see if he wanted to spend time together catching up. After some discussion, it was determined that Appellant would get a ride to JG's house, and that they would then drive JG's car back to Appellant's on-base dormitory room to watch a movie.

Once they arrived at Appellant's dormitory, Appellant and JG held hands walking to Appellant's dormitory room. Upon entering the room, JG sat down on Appellant's bed while he set up the movie. Based on Appellant's request, JG then lay down with Appellant on the bed in a "spooning" position with Appellant's hand on JG's hips. Shortly after the movie started, Appellant started to rub JG's stomach and legs. She told him to stop and he complied.

After a short period of time, Appellant began to rub JG's stomach and legs again. Appellant also began to kiss JG on her face and neck. Thereafter, Appellant moved his hand first to JG's breast and then he eventually touched her vaginal area. Appellant also placed JG's hand on his penis. JG immediately moved her hand, but Appellant continued to place her hand on his penis a number of times during the course of the movie. JG repeatedly told Appellant "no" and that she did not want to engage in any physical activity with him during the course of this encounter. According to JG, she verbally rejected Appellant's touching of her too many times to count.

Once the movie was over, JG turned off the television and lay back down on the bed with Appellant. Appellant and JG then engaged in anal and vaginal intercourse. Although JG asserted all of the sexual activity with Appellant was non-consensual because she verbally and physically resisted his advances during the entire evening, the court members only found Appellant guilty of touching JG's breasts without her consent.

*Sufficiency of the Evidence*

Appellant alleges the findings adjudged by the court members were "illogical" as they acquitted him of other sexual acts occurring the same evening. Appellant specifically cites the not guilty finding for the sexual contact specification alleging he touched JG's vaginal area given this contact took place close in time to his touching of JG's breasts.

While we could speculate regarding the announced findings in this case, we decline to do so as an inconsistent verdict does not provide grounds for relief. *United States v. Lyon*, 35 C.M.R. 279, 285 (C.M.A. 1965); *see also United States v. Perry*, 22 M.J. 669, 671 (A.C.M.R. 1986) ("Jury verdicts which appear inconsistent are affirmed because it is recognized that juries do not necessarily reach their verdicts by linear logic.") (emphasis omitted). Instead, each specification must be reviewed to determine if there is sufficient evidence to support the verdict. *See United States v. Snipes*, 18 M.J. 172, 175 (C.M.A. 1984). Relevant to the facts of this specific case, it is recognized that an individual may consent to one sexual act, but not another during the same encounter. *See United States v. Wilson*, 13 M.J. 247, 252 (C.M.A. 1982) (Everett, C.J., dissenting).

We review issues of factual and legal sufficiency de novo. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); *see also United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F. 2000). In conducting this unique appellate role, we take "a fresh, impartial look at the

evidence," applying "neither a presumption of innocence nor a presumption of guilt" to "make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt." *Washington*, 57 M.J. at 399.

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Turner*, 25 M.J. at 324; *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002). The term reasonable doubt does not mean that the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citing *United States v. Rogers*, 54 M.J. 244, 246 (C.A.A.F. 2000)).

To sustain a conviction for abusive sexual contact in this case, the Government was required to prove, beyond a reasonable doubt, that: (1) Appellant committed sexual contact upon JG by touching her breasts directly and through her clothing; (2) his touching resulted in bodily harm to JG; (3) his touching was done without the consent of JG; and (4) his touching was done with the intent to arouse or gratify his sexual desires. Article 120(d), UCMJ, 10 U.S.C. § 920(d).

We are confident, based on JG's testimony and her text messages admitted at trial, that a reasonable factfinder could find all the essential elements of the offense beyond a reasonable doubt. Moreover, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are also personally convinced of Appellant's guilt.

The only substantive issues in contention at trial were whether JG consented to the sexual contact, or, alternatively, Appellant had a mistaken belief as to her consent. With regard to whether she ever affirmatively consented to Appellant touching her breasts, JG testified that she repeatedly told Appellant "no" and that she was not interested in physical contact during the time Appellant touched her leading up to intercourse. While trial defense counsel offered evidence of JG's poor character for truthfulness, we do not find this evidence compelling given the limited and somewhat remote factual bases set forth by the two Defense witnesses.

The victim's testimony at trial provided minimal details of the alleged sexual contact and failed to provide a clear timeline of the events during the evening, thus making our statutory review more difficult. However, text messages, sent by JG the day after the incident, were also admitted at trial. These text messages corroborate JG's testimony on direct examination, as well as fill in some of the gaps regarding the timing of Appellant's actions. Taken as a whole, the evidence convinces us JG constantly rejected Appellant's

attempts at sexual foreplay, making his touching of her breasts non-consensual under the law.

We are also convinced that any mistaken belief by Appellant regarding JG's consent to that sexual contact was not reasonable. At the time of the incident, Appellant and JG had not seen each other in person for over a year. They had no history of romantic encounters leading up to the evening at Appellant's dormitory room, and JG testified there were no discussions about physical intimacy prior to her arrival that evening. While Appellant had shown a romantic interest towards JG, she did not reciprocate his affection in such a way that would lead Appellant to believe anything more than JG was in his dormitory room to watch a movie as they had earlier agreed.

JG was cross-examined at trial on a number of her actions which may have led Appellant to believe she was consenting to sexual activity with him. Specifically, JG testified that she acceded to Appellant's badgering and kissed him at some point during the encounter to appease him. Additionally, JG noted she allowed Appellant to place her hand on his penis on more than one occasion. Notwithstanding the fact that it is unclear whether this activity took place before the touching resulting in Appellant's only conviction, JG's testimony convinces us that her reluctant participation in these activities would not provide Appellant with a reasonable belief regarding JG's consent.

Appellant's actions further undercut any claim that his mistaken belief regarding consent was reasonable. Appellant never communicated his interest in touching JG's person, or otherwise verbally attempted to gauge her interest in the sexual activity. He just engaged in the conduct until JG asked him to stop. While JG testified Appellant would initially honor her request that he stop touching her, he would quickly reinitiate contact.

JG's testimony that she repeatedly told Appellant no, or that she was not interested in sexual activity, was corroborated by text messages from Appellant. In a message to JG the day after the incident, Appellant acknowledged his awareness that JG did not want to engage in sexual activity earlier in the evening, but that he believed she later changed her mind. Additionally, when discussing the fact that they engaged in intercourse, Appellant noted in a second texting session with JG a few days after the incident that "[s]omeone can say something at the beginning but can change their mind later on." These text messages from Appellant corroborate JG's testimony regarding her constant rejection of Appellant's early advances, as well as show that his belief regarding JG's consent was not objectively reasonable.

*Admission of Sentencing Evidence*

Appellant next faults the military judge for allowing testimony from JG and JG's mother during sentencing about how the court-martial process negatively impacted JG. Given he was only convicted of one specification of abusive sexual contact for touching

JG's breasts, Appellant argues testimony about the impact of the entire court-marital process was not directly related to his conviction as it encompassed acts which resulted in acquittal. Appellant acknowledges his counsel did not object to this testimony at trial.

A military judge's decision to admit sentencing evidence is reviewed for an abuse of discretion. *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010). Failure to object forfeits appellate review absent plain error. *United States v. Eslinger*, 70 M.J. 193, 197–98 (C.A.A.F. 2011). "To prevail under a plain error analysis, [the appellant bears the burden of showing] that: '(1) there was an error; (2) it was plain or obvious; and (3) the error materially prejudiced a substantial right.'" *United States v. Scalo*, 60 M.J. 435, 436 (C.A.A.F. 2005) (quoting *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

The prosecution may present evidence of aggravating circumstances "directly relating to or resulting from the offenses of which the accused has been found guilty" to include "social, psychological, and medical impact on or cost to any person or entity who was the victim of an offense committed by the accused." Rule for Courts-Martial (R.C.M.) 1001(b)(4). The meaning of "directly related" is "a function of both what evidence can be considered and how strong a connection that evidence must have to the offenses of which the accused has been convicted." *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007). This analysis calls for considered judgment by the military judge and, therefore, will not be overturned lightly. *United States v. Wilson*, 47 M.J. 152, 155 (C.A.A.F. 1997).

After reviewing the entire sentencing proceedings, we find no error, plain or otherwise. The victim's testimony about the court-martial process did not improperly impinge or comment on Appellant's constitutional right to plead not guilty and confront the witnesses against him. *Cf. United States v. Carr*, 25 M.J. 637, 638 (A.C.M.R. 1987). On the contrary, JG and her mother discussed the physical, social, and psychological impacts on JG caused by both Appellant's actions and the overall processing of the court-martial. "Testimony as to the effect of the process, including the trial, on the victim, as was admitted here, certainly comes within the rather broad ambit of" R.C.M. 1001(b)(4). *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009).

We are also confident Appellant suffered no prejudice from this testimony. The military judge instructed the members they were sentencing Appellant only for the offense of which they found him guilty. We presume the court members followed the judge's instructions. *See United States v. Stewart*, 71 M.J. 38, 42 (C.A.A.F. 2012). Trial defense counsel likewise reinforced this limitation during his sentencing argument. Based on the sentence eventually imposed in this case, we believe the panel members were not inflamed or otherwise prejudiced by the testimony of JG and her mother.

*Sentence Appropriateness*

Finally, Appellant argues his sentence is inappropriately severe. In support of this claim and with this court's approval, Appellant submitted six court-martial orders from other sexual assault cases claiming the cases are closely related to Appellant's offense. Appellant also argues the specific circumstances of his case reflect the inappropriate nature of the bad-conduct discharge. However, absent a broad statement at the conclusion of his brief, Appellant provides no factual basis for this claim on appeal.

This court reviews sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Anderson*, 67 M.J. 703, 705 (A.F. Ct. Crim. App. 2009). Although we are accorded great discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency. *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010).

In reviewing for sentence appropriateness, "[t]he Courts of Criminal Appeals are required to engage in sentence comparison only 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001) (quoting *United States v. Ballard*, 20 M.J. 282, 283 (C.M.A. 1985)). An appellant bears the burden of demonstrating that the cited cases are "closely related" to the appellant's case and the sentences are "highly disparate." *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999). Closely-related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* If the appellant meets this burden, the Government "must show that there is a rational basis for the disparity." *Id.* However, it is important to note when conducting this analysis that "[s]entence comparison does not require sentence equation." *United States v. Durant*, 55 M.J. 258, 260 (C.A.A.F. 2001) (citations omitted).

Appellant has not met his burden of showing the cases submitted for this court's review are closely related. Appellant provides no context with the court-martial orders to establish the direct nexus required for this court to engage in sentence comparison. As such, we decline to do so in this case.

After examining all matters contained in the record, including the nature and seriousness of the offense to which Appellant stands convicted, we do not find the sentence imposed to be inappropriately severe. The record of trial establishes that Appellant began the evening with only one thing in mind—to have an intimate, physical encounter with JG. When she initially declined his romantic overtures, Appellant was provided with an

opportunity to honor JG's request. He declined this opportunity and instead continued to force himself on JG until he violated her person by touching her breasts.

Given the not guilty findings to related offenses, it may be tempting to discount or trivialize the seriousness of the offense for which Appellant was convicted. Yet any nonconsensual sexual touching is not trivial, and the adverse personal impact on JG establishes its significance. This, when viewed in conjunction with Appellant's premeditation, leads us to uphold Appellant's sentence.

Although we find Appellant's conviction legally and factually sufficient and his sentence not inappropriately severe, one could question the fairness of sustaining the conviction, along with the attendant consequence of sexual offender registration, based on the court member's ultimate findings. This is especially true given the fact that four panel members recommended that the convening authority grant Appellant relief during the subsequent post-trial processing ordered by this court. While recognizing this viewpoint, we note our review is not one of equity. *See Nerad*, 69 M.J. at 143. Instead, equitable relief at this point still remains a command prerogative. *See, e.g.*, R.C.M. 1206. We write only to note that equitable mechanisms of relief are outside the scope of our statutory review. Article 66(c), UCMJ.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

KURT J. BRUBAKER
Clerk of Court