38

UNITED STATES, Appellee,

v.

Richard L. LAWSON, Airman Apprentice U.S. Navy, Appellant.

No. 66,318.
NMCM 890047.

U.S. Court of Military Appeals.

Argued Oct. 3, 1991.

Decided Jan. 27, 1992.

For Appellant: *Lieutenant Matthew L. Kronisch,* JAGC, USNR (argued); *Lieutenant Tamara A. Massengale,* JAGC, USNR (on brief).

For Appellee: *Lieutenant Dwight N. Mersereau,* JAGC, USNR (argued); *Commander Thomas W. Osborne,* JAGC, USN (on brief); *Lieutenant Gregory P. Belanger,* JAGC, USNR.

*Opinion*

EVERETT, Senior Judge:

I

A military judge sitting alone as a general court-martial tried Lawson for aggravated arson (5 specifications). *See* Art. 126, Uniform Code of Military Justice, 10 USC § 926. Pursuant to a pretrial agreement, Lawson entered pleas of guilty, and the judge sentenced him to confinement for 14 years, total forfeitures, reduction to the pay grade of E–1, and a dishonorable discharge. In turn, the convening authority approved this sentence as adjudged but, as required by the pretrial agreement, suspended for 12 months the confinement in excess of 7 years. The Court of Military Review set aside the findings of guilty to four of the specifications and the sentence, and authorized a rehearing on those findings and the sentence. Unpub. op. (March 28, 1989).

Lawson's rehearing took place before a general court-martial with officer members. Appellant again pleaded guilty—this time, pursuant to a pretrial agreement under which the convening authority would suspend any confinement adjudged in excess of 6 years. In arguing on sentence, trial counsel

> contend[ed] that this is a very serious offense and the government is asking for the maximum; the maximum as will be instructed by the military judge is 14 years and the government feels that this [sic] offenses that have been committed deserves the maximum of 14 years confinement.

The Government also asked that a dishonorable discharge and total forfeitures be adjudged. The defense, while conceding the seriousness of the offenses, urged the court members to "temper your justice with mercy and compassion."

The military judge advised the members that the maximum punishment was a dishonorable discharge, *confinement for 14 years*, reduction to pay grade E–1, and total forfeitures. Then the members deliberated and sentenced Lawson to a dishonorable discharge, confinement for 5 years, forfeiture of $649.00 pay per month for 60 months, and reduction to the pay grade of E–1. The convening authority approved the sentence; the Court of Military Review affirmed the findings and sentence;[1] and we granted review to determine whether the military judge had instructed correctly as to the maximum punishment. 33 M.J. 164.[2]

II

A

In this appeal, Lawson relies on RCM 810(d)(1), Manual for Courts–Martial, United States, 1984, which states that

> offenses on which a rehearing, new trial, or other trial has been ordered shall not be the basis for punishment in excess of or more severe than the legal sentence adjudged at the previous trial or hearing, as ultimately reduced by the convening or higher authority, unless the sentence prescribed for the offense is mandatory.

Appellate defense counsel point out that the action of the convening authority after Lawson's first trial provided for a year's suspension of the "confinement in excess of 7 years"; and, if the conditions of the suspension were complied with for the required period, then all of the confinement above 7 years was to be remitted.

At the time that Lawson's first conviction was set aside and a rehearing authorized, he had already completed almost half the period of suspension provided for in the

1. The decision below dated March 7, 1991, does not explicitly affirm the sentence, although it does specifically affirm the findings.

2. The issue which we granted was:
WHETHER THE MAXIMUM PUNISHMENT AT A REHEARING IS THE SENTENCE AS PREVIOUSLY ADJUDGED OR THE PREVIOUS CAP ON CONFINEMENT NEGOTIATED IN THE PRETRIAL AGREEMENT WHEN THE SUSPENSION PERIOD CONTAINED IN THE PRETRIAL AGREEMENT HAD NOT RUN AT THE TIME OF THE REHEARING.

convening authority's action[3] after the first trial. There is no reason to believe that he would not have satisfactorily completed the remainder of that period. Thus, according to the defense view, the 14-year sentence adjudged by the military judge at Lawson's first trial had been "ultimately reduced by the convening or higher authority" (RCM 810(d)) to 7 years; so, under the limitation set forth in RMC 810(d)(1), the court-martial at the rehearing was precluded from adjudging a sentence greater than 7 years.

Since a military judge must advise the court members "of the maximum authorized punishment which may be adjudged," see RCM 1005(e)(1), the defense logic leads to the conclusion that the military judge should have instructed the members that 7—not 14—years was the maximum authorized punishment. See RCM 1005(e)(1), Discussion. Appellate defense counsel also insist that Lawson was prejudiced by this alleged error because—even though the sentence adjudged at the rehearing was far below that imposed by the military judge at the first trial and also was less than the sentence provided for in either pretrial agreement—the members might have imposed an even lighter sentence had they been properly instructed as to the maximum punishment.

### B

Article 63, UCMJ, 10 USC § 863 (1983), is the starting point for our consideration of the defense argument. It provides in part:

> Upon a rehearing the accused may not be tried for any offense of which he was found not guilty by the first court-martial, and no sentence in excess of or more severe than the original sentence may be imposed, unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceeding, or unless the sentence prescribed for the offense is mandatory. If the sentence approved after the first court-martial was in accordance with a pretrial agreement and the accused at the rehearing changes his plea with respect to the charges or specifications upon which the pretrial agreement was based, or otherwise does not comply with the pretrial agreement, the sentence as to those charges or specifications may include any punishment not in excess of that lawfully adjudged at the first court-martial.

▉ As we interpret this language, a court-martial at a retrial may not adjudge a sentence greater "than the original sentence." There is no reference to "the sentence as approved," cf. Art. 66(b)(1), UCMJ, 10 USC § 866(b)(1), or to the sentence "as ultimately reduced by the convening or higher authority," RCM 810(d)(1). Thus, as we interpret the plain language of Article 63, the Uniform Code prohibited the court-martial at the second trial from adjudging a sentence to confinement greater than 14 years. In view of this limitation on the sentence that could "be imposed" at the rehearing, it would appear that, under RCM 1005(e)(1), the military judge was required to instruct the court members that they could not adjudge confinement of more than 14 years.[4] Contra RCM 1005(e)(1), Discussion.

---

3. The Action dated December 22, 1988, provides for "suspen[sion] for 12 months" and then automatic remission of the suspended portion absent vacation of the suspension. The Action fails to state that the 12 months begins from the date of trial. However, the pretrial agreement so provides, and that beginning date is part of the action by implication.

4. It has been suggested that an accused receives a windfall when at the second trial the instruction on maximum punishment is framed with reference to the sentence adjudged at the first trial instead of with reference to the maximum punishment that the President has authorized for the offenses. Since the retrial normally is caused by an error for which in some way the Government is accountable, however, the advantage enjoyed by an accused at the retrial may not be unfair. In any event, whether it is a windfall, it seems to be compelled by the present language of the Uniform Code of Military Justice and the Manual for Courts–Martial, United States, 1984.

■ Our holding as to the maximum punishment which the second court-martial may adjudge does not make irrelevant the action of the convening authority after the first trial. If the sentence adjudged at the second trial is greater than the sentence at the first trial "as ultimately reduced by the convening or higher authority," then, under the specific language of RCM 810(d)(1), the convening authority must reduce the second sentence so that it allows for no "punishment in excess of or more severe than the sentence adjudged at the previous trial or hearing, as ultimately reduced by the convening or higher authority." *See* RCM 1107(f)(5). The only exception would be if the earlier reduction had taken place after the first trial pursuant to a pretrial agreement and at a retrial the accused failed to comply with that agreement. *See* Art. 63.

Thus, if at his second trial Lawson had received a sentence to confinement in excess of 7 years, the convening authority would have been obligated to suspend that portion thereof which exceeded 7 years upon the same conditions as the suspension of the first sentence. Moreover, with respect to the period of suspension, appellant would have been entitled to credit for that portion of the 1–year period of suspension which he had successfully served before the conviction at his first trial was reversed.[5]

The Government contends that RCM 810(d)(1) does not apply to this case because a suspension is only contingent and does not constitute a reduction until the suspension has been served and the portion of the sentence which was suspended has been remitted. According to this view, Lawson acquired no rights by reason of the action of the convening authority after the first trial, because he never completed the

period of suspension before his conviction was reversed.[6]

■ We view the Government's interpretation as too technical; and in our view a suspension can qualify as a type of "reduction" for purposes of RCM 810(d)(1). Moreover, when, after trial, the suspension takes place pursuant to a pretrial agreement, the accused is entitled to the benefit of that agreement as long as he continues to perform it. *Cf. United States v. Penister*, 25 MJ 148 (CMA 1987); Art. 63; RCM 810(d)(2).

### III

■ The military judge did not err at the rehearing in instructing the court members on the maximum punishment. Moreover, Lawson was not deprived of any rights which he had acquired either pursuant to RCM 810(d)(1) or under any pretrial agreement, because the 5–year sentence adjudged at the second trial was more favorable to appellant than any reduction of sentence that had been granted by a convening authority or that was provided for in a pretrial agreement.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges CRAWFORD, GIERKE, and WISS did not participate.

SULLIVAN, Chief Judge (concurring in the result):

RCM 810(d)(1), Manual for Courts–Martial, United States, 1984, states:

(d) *Sentence limitations.*

(1) *In general.* Except as otherwise provided in subsection (d)(2) of this rule, offenses on which a rehearing, new trial, or other trial has been ordered shall not be the basis for punishment in excess of or more severe than *the legal sentence*

---

5. If at the second trial appellant had refused to comply with the pretrial agreement entered into before his first trial, then, under the exception contained in RCM 810(d)(2), Manual, *supra,* he would not have been entitled to any mitigating action by the convening authority or any credit on any period of suspension of the sentence.

6. Even under the Government's argument, if Lawson had completed the period of suspension before the conviction was reversed, he would be entitled to the benefit of the remission of the unserved portion of the sentence.

*adjudged at the previous trial or hearing, as ultimately reduced by the convening or higher authority,* unless the sentence prescribed for the offense is mandatory. When a rehearing on sentencing is combined with trial on new charges, the maximum punishment shall be the maximum punishment for the offenses being reheard as limited above plus the total maximum punishment under RCM 1003 for any new charges of which the accused has been found guilty. In the case of an "other trial" no sentence limitations apply if the original trial was invalid because a summary or special court-martial improperly tried an offense involving a mandatory punishment or one otherwise considered capital. (Emphasis added.) Here, appellant's sentence at his first court-martial was not "ultimately reduced" from 14 years to 7 years; it could not be until the suspension period was completed and remission occurred. *See* RCM 1108(a) and (e). Thus, there was no conflict between Article 63, Uniform Code of Military Justice, 10 USC § 863, and RCM 810(d)(1) in this case, and the members were properly instructed as to the maximum authorized punishment. *See* RCM 1005(e)(1), Discussion.

COX, Judge (concurring in part and concurring in the result):

In the main, I agree with both my Brothers. I write separately because I feel that in one area our approach to this subject has been wrong over the years. In the military, unlike most jurisdictions, sentencing is done by court members unless the accused affirmatively requests that it be done by judge alone. Art. 16(1)(B) and (2)(C), Uniform Code of Military Justice, 10 USC § 816(1)(B) and (2)(C). In general, I have no qualms with this practice. However, in the other systems, in a circumstance like that present here, the judge would always know what the maximum sentence for the offense *was.* In other words, the judge would know how relatively serious the conduct was viewed from a societal standpoint. Obviously, a greater sentence at a rehearing for the same offenses ordinarily cannot

be adjudged. RCM 810(d)(1), Manual for Courts–Martial, United States, 1984. But when an accused has received something less than the maximum sentence at a previous hearing, the judge at the rehearing knows what the maximum for the offense was.

In the military, we use court members to fulfill the function of the judge in most jurisdictions. The problem is, we blindfold the members. We ask them to perform the functions of the judge without telling them what the judge knows. The instant case is illustrative.

Appellant pleaded guilty to five specifications of aggravated arson—torching inhabited dwellings, in violation of Article 126, UCMJ, 10 USC § 926. As appellant and the judge well knew, the maximum confinement for these crimes was *100 years!* Para. 52e(1), Part IV, Manual, *supra.* At his first trial, he requested sentencing by judge alone, and the judge handed down 14 years' confinement. After the majority of the pleas were vacated by the Court of Military Review, the accused re-entered pleas of guilty for the offenses. This time, however, he accepted sentencing by court members, *and the members were instructed that the maximum confinement was 14 years!* Not surprisingly, the members returned a significantly lesser sentence. Here is where I depart from the lead opinion and our past military practice.

If the court members are to perform the role of sentencer, they should know exactly what the judge would know. In particular, they should know how serious society views these offenses, and they should know the maximum sentence for the offenses. Obviously, the sentence at the rehearing cannot be greater than that originally imposed. But justice can be accomplished in one of several ways. One way is simply to tell the members the *original* maximum punishment. Should they return a sentence greater than the prior sentence, they can then be informed of the prior sentence and instructed to lower the sentence at least to the level of the prior sentence. Another way is that the members can be told up front what the maxi-

mum sentence was, and what the prior sentence was. My preference would be for the former. My concern in the second example would be that the panel might be tempted to adjudge the same sentence as before. There may be other ways the same objective can be achieved. I would let the defense propose the manner.

The goal in all of this should be to achieve a proper sentence for the conduct. It is not a game, and the accused is not the only party with an interest in the outcome. A "windfall" for one party can be an injustice for the other—and for society as a whole. Inherent systemic bias, one way or the other, should not be countenanced.