UNITED STATES, Appellee

v.

Carey E. GIBSON, Private
U.S. Army, Appellant.

No. 94–1220.
CMR No. 9301062.

U.S. Court of Appeals for
the Armed Forces.

Argued June 1, 1995.

Decided Sept. 29, 1995.

For Appellant: *Captain Eric S. Krauss* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Major Michael A. Egan, Captain Christopher W. Royer* (on brief).

For Appellee: *Captain Michael E. Mulligan* (argued); *Colonel John M. Smith* and *Major Lyle D. Jentzer* (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

1. Pursuant to his pleas, appellant was convicted of violation of a lawful general regulation, damaging military property, and aggravated assault on 12 soldiers (1 specification), in violation of Articles 92, 108, and 128, Uniform Code of Military Justice, 10 USC §§ 892, 908, and 928, respectively. The convening authority approved the sentence of a bad-conduct discharge, 27 months' confinement, partial forfeitures, and reduction to the lowest enlisted grade. The Court of Military Review[1] affirmed the findings and sentence. 39 MJ 1043 (1994). We granted appellant's petition to review the following issue:

WHETHER THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT'S GUILTY PLEA TO CHARGE III AND IT[S] SPECIFICATION [ASSAULT ON 12 SOLDIERS BY DROPPING AN EXPLOSIVE DEVICE, CAUSING IT TO EXPLODE WITH A FORCE LIKELY TO PRODUCE DEATH OR

---

1. *See* 41 MJ 213, 229 n.* (1994).

GRIEVOUS BODILY HARM] BECAUSE INSUFFICIENT FACTS WERE ELICITED TO SUPPORT A FINDING OF GUILTY OF AGGRAVATED ASSAULT THROUGH CULPABLE NEGLIGENCE.

2. We hold that the military judge did not err in accepting appellant's guilty pleas to aggravated assault through culpable negligence.

### FACTS

3. Appellant was a cavalry scout with 4 years of military experience. He had fired a Mark 19, 40 millimeter grenade launcher on several occasions, including in August of 1992. Appellant had received a safety briefing on handling explosives and duds, and had signed a roster after a class in which he was instructed never to pick up anything resembling an explosive or a dud.

4. During the providence inquiry, appellant testified that on November 18, 1992, he walked from the motor pool to his unit's afternoon formation. On the way there, appellant "kicked" an object, a 40mm grenade round, out of a pothole. He picked it up, not "paying attention all that much to what [he] was doing." Appellant stated that "it looked like a bullet, something like a bullet." He recognized the object as "an explosive device." Later he admitted that he "should have known that it was a dud or an explosive device." He recalled his briefing that, if there is "any doubt," he should "treat it like an explosive." He admitted that he purposely "gave it a little twist and let it go." He also admitted that the dropping of the grenade was either culpably negligent or reckless.

5. Later in the providence inquiry, he testified that he "picked it up on purpose" and "dropped it on purpose." Appellant took the 40mm grenade round to the formation and continued playing with it. He attempted to spin the round like a top. When the round struck the ground and exploded, the results were catastrophic.

6. During the providence inquiry, appellant admitted that the elements of the offense correctly described his conduct. He also asserted that he understood the terms "attempt," "offer," and "grievous bodily harm." Additionally, appellant admitted that a battery is "unlawful" if done either "intentionally" or through a "culpably negligent application of force or violence to another person." Later the judge defined the term "culpable negligence."

7. The stipulation in support of the pleas notes that, when two other soldiers in the formation noticed appellant tossing the round with the gold cap, they were terrified. Private First Class Kemp "immediately began to turn and run away from the impending danger. He looked at and warned SPC [Specialist] Young, who was standing to his left that 'he's got a hot round!'"

8. As a result of appellant's acts, twelve soldiers were injured and taken to the hospital. Four of these soldiers were severely injured. Three soldiers' injuries were so serious that they were medically retired from the Army.

### DISCUSSION

9. Culpable negligence has been considered a basis of criminal assault, both in theory and in practice, in the United States military for at least 6 decades.

10. Article 128 was originally proposed as part of Professor Edmund Morgan's draft of the Uniform Code of Military Justice. The Morgan draft sets out the proposed Article 128, followed by References and Commentary as follows:

(a) Any person subject to this code who attempts or offers with unlawful force or violence to do bodily harm to another person, whether or not the attempt or offer is consummated, is guilty of assault and shall be punished as a court-martial may direct.

(b) Any person subject to this code who—

(1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm; or

(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;

is guilty of aggravated assault and shall be punished as a court-martial may direct.

*References:* [²]

AW 93;

NC & B, sec. 48.

*Commentary:*

This Article is divided into two categories. Subdivision (a) defines a simple assault. Subdivision (b) sets forth the elements of aggravated assault.

This Article differs from present service . practice in that assaults with intent to commit specific crimes have been eliminated. Such assaults could be punished under Article 80, 10 USC § 880 (attempts), or, if the intent is doubtful, under this article.

Hearings on H.R. 2498 Before a Subcomm. of the House Armed Services Comm., 81st Cong., 1st Sess. 1233–34 (1949). Before the Senate Armed Services Committee, Professor Morgan stated that generally "the present punitive articles of the Articles of War [AW] and the Articles for the Government of the Navy are retained." Hearings on S.857 and H.R. 4080 Before a Subcomm. of the Senate Armed Services Comm.; 81st Cong., 1st Sess. 37 (1949). The purpose of the Uniform Code of Military Justice was to "take[ ] the place of" what had existed in the three separate services. *Id.* at 38.

11. As to the background of "AW 93," Chief Judge Sullivan, in his concurring opinion in *United States v. Joseph,* 37 MJ 392, 399 n. 3 (CMA 1993), pointed out that paragraph 180*k,* Manual for Courts–Martial, U.S. Army, 1949, in construing an assault under AW 93, states:

The intent to do bodily harm may consist of culpable negligence in doing an act which causes personal injury to another or which puts another in reasonable fear of bodily injury. *See* 180*a* (Manslaughter) for discussion of culpable negligence.

1949 Manual, *supra* at 245. It goes on:

Moreover, later in discussing battery that paragraph of the Manual goes on to state: If the injury is inflicted unintentionally and

without culpable negligence, the offense is not committed.

*Id.* at 246.

12. The drafters of the first Manual under the Uniform Code, who were most familiar with the hearings before Congress on the Code, provided: "An assault may consist of a culpably negligent act or omission which foreseeably might and does cause another reasonably to fear that force will at once be applied to his person." Para. 207a, Manual for Courts–Martial, United States, 1951.

13. Similarly, Robinson O. Everett, a scholar on military law, recognized in his book, *Military Justice in the Armed Forces of the United States* 61 (1956), that an "offer" could be the result of a "culpably negligent" act.

14. As finally enacted in 1950, Article 128 provided:

(a) Any person subject to this code who attempts or offers with unlawful force or violence to do bodily harm to another person, whether or not the attempt or offer is consummated, is guilty of assault and shall be punished as a court-martial may direct.

(b) Any person subject to this code who—

(1) commits an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm; or

(2) commits an assault and intentionally inflicts grievous bodily harm with or without a weapon;

is guilty of aggravated assault and shall be punished as a court-martial may direct.

15. Notably, Congress adopted the Morgan proposal without any significant change.

16. Earlier decisions of this Court acknowledged the traditional theory of a culpably negligent battery. *See United States v. Torres–Diaz,* 15 USCMA 472, 473, 35 CMR 444, 445 (1965); *United States v. Redding,* 14 USCMA 242, 244, 34 CMR 22, 24 (1963). Presumptively, the judges deciding those cases were aware of the congressional hearings.

17. The doctrine of *stare decisis* requires great weight to be given to these opinions

---

**2.** These references are to Article of War 93 and § 48 of Naval Courts and Boards, 1937.

because the primary responsibility for overruling decisions on statutory construction is with Congress. *Burnet v. Coronado Oil & Gas Co.*, 285 U.S. 393, 405–07, 52 S.Ct. 443, 446–47, 76 L.Ed. 815 (1932) (Brandeis, J., dissenting); *see also Cleveland v. United States*, 329 U.S. 14, 18, 67 S.Ct. 13, 15, 91 L.Ed. 12 (1946). While it might be argued that it is unrealistic for Congress to overrule precedent from this Court, Congress has done that on numerous occasions. Over the last several years, Congress has carefully examined the operation of the military criminal justice system and has enacted corrective legislation.[3]

■ 18. It is an accepted tenet of statutory construction that congressional inaction after *Redding* and *Torres–Diaz* can be interpreted as reaffirming those decisions. Eskridge, *Interpreting Legislative Inaction*, 87 Mich.L.Rev. 67, 125–37 (1988); *cf. United States v. Graham*, 16 MJ 460, 464 n. 4, 465 n. 1 (CMA 1983).

■ 19. Our standard for determining whether a guilty plea should be rejected is whether there is a "substantial basis" in law and fact for questioning the plea. The "mere possibility of conflict" is not enough basis to set aside a plea. *United States v. Prater*, 32 MJ 433, 436 (CMA 1991).

■ 20. We hold that appellant's plea inquiry establishes an aggravated assault as the result of a culpably negligent act. Applying an objective test, we conclude that there clearly was a culpably negligent act evidenced by the reaction of the soldiers in the group and the information obtained from appellant during the plea inquiry. Appellant's prior training clearly established that he knew the object was an explosive device and one that required careful handling. He also knew that he should not pick it up or, if he did, that he should handle it as if it were an explosive. Instead of acting reasonably and following training rules, appellant purposely picked up the explosive and then dropped it to the ground. (¶ 5) It is significant that he knew that this was an explosive device but took no steps to protect himself or others from grave risk; instead, he dropped it, causing injury to twelve soldiers, three of whom were medically retired from the Army because of their injuries. The record adequately establishes that appellant was culpably negligent in causing bodily harm to other soldiers in the formation.

The decision of the United States Army Court of Military Review is affirmed.

Judges COX and GIERKE concur.

3. Based on an opinion by Judge Cox in *United States v. Lawson*, 34 MJ 38, 42 (CMA 1992), the National Defense Authorization Act for Fiscal Year 1993, Pub.L. No. 102–484 § 1065, 106 Stat. 2506 (Oct. 23, 1992), amended Article 63, Uniform Code of Military Justice, 10 USC § 863 (1983), to correct the instructions to the members as to the maximum punishment on rehearing. The same act also amended Article 3(a), UCMJ, 10 USC § 803(a), to close the jurisdictional gap created by earlier case law. § 1064, 106 Stat. 2505.

Article 69, UCMJ, 10 USC § 869, was amended in 1989 to limit the extraordinary-writ jurisdiction of this Court. Pub.L. No. 101–189, § 1302, 103 Stat. 1576. *Lemoine v. Baker*, 36 MJ 86, 89 (CMA 1992).

The Military Justice Act of 1983 also made a number of changes in the Code in reaction to decisions of this Court:

1. Amended Articles 26 and 27, UCMJ, 10 USC §§ 826 and 827, respectively, "to eliminate the requirement" imposed by this Court "that the convening authority personally detail the military judge and counsel. *See United States v. Ryan*, 5 MJ 97 (CMA 1978); *United States v. Newcomb*, 5 MJ 4 (CMA 1978)."

2. Amended Article 34(a)(2), UCMJ, 10 USC § 834(a)(2), to permit waiver of an Article 32, UCMJ, 10 USC § 832, investigation. *See United States v. Schaffer*, 12 MJ 425 (CMA 1982). The Committee Report recognized that failure to comply with Article 34 was not jurisdictional error, citing *United States v. Ragan*, 14 USCMA 119, 33 CMR 331 (1963). *See* S.Rep. No. 53, 98th Cong., 1st Sess. 17 (1983).

3. Amended Article 60, UCMJ, 10 USC § 860, to reduce appellate litigation involving the staff judge advocate's review (renamed recommendation) and the convening authority's action. *See, e.g., United States v. Morrison*, 3 MJ 408, 409 (CMA 1977).

4. Added Article 112a, UCMJ, 10 USC § 912a, to prohibit wrongful distribution of drugs, eliminating some of the cumbersome litigation imposed by this Court. *See, e.g., United States v. Ettleson*, 13 MJ 348 (CMA 1982). S.Rep. No. 53, *supra* at 13, 17, 20, 29.

Article 2(b), UCMJ, 10 USC § 802(b), was amended in 1979 to overrule *United States v. Russo*, 1 MJ 134 (CMA 1975). *See* S.Rep. No. 197, 96th Cong., 1st Sess. 122, *reprinted* in 1979 U.S.Code Cong. & Admin. News 1827.

SULLIVAN, Chief Judge (concurring in the result):

21. I would resolve this guilty-plea case on the basis of Judge Cox's opinion in *United States v. Brown*, 22 MJ 448, 450 (CMA 1986). *See generally United States v. Joseph*, 37 MJ 392, 397 (CMA 1993) (Sullivan, C.J., concurring). A reasonable soldier should and would have known the great risk to life and property created by appellant's careless treatment of the grenade round. *See also United States v. Harrison*, 26 MJ 474 (CMA 1988).

WISS, Judge (concurring in the result):

22. I do not agree with the majority's theory that appellant's guilty plea was a provident admission of a culpably negligent aggravated battery. In my separate opinion in *United States v. Joseph*, 37 MJ 392, 401 (CMA 1993), I wrote in detail the reasoning underlying my conclusion that Article 128, Uniform Code of Military Justice, 10 USC § 928, does not proscribe a culpably negligent battery. I adhere to that construction of our assault statute—a construction that I believe is manifest on its face.

23. Nonetheless, I can join the majority in rebuffing this appellate attack on the providence of a guilty plea. In the stipulation of fact that was admitted as prosecution exhibit 1 in support of the proffered plea, appellant admitted that, when he took the explosive into a group of soldiers, two of them recognized the object as a live or " 'hot' round" from its gold cap. The following excerpt from the stipulation reflects these soldiers' reaction:

The first time PFC Kemp and PVT Schmiege noticed the accused with the "hot" round, he was tossing it from hand to hand with his hands about 12 inches apart and stomach level. *Both of these soldiers were terrified when they saw the* gold-capped round. PFC Kemp immediately began to turn *and run away from the impending danger. He looked at and warned SPC Young, who was standing to his left that "he's got a hot round!"* Just as PFC Kemp was warning SPC Young about the round, the round hit the ground and exploded. The blast knocked both PFC Kemp and SPC Young backwards and off their feet.

(Emphasis added.)

24. These admissions adequately reflect an aggravated assault of the "offer" variety. That type of assault is committed by "an unlawful demonstration of violence, either by an intentional or *by a culpably negligent act* or omission, *which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm.*" Para. 54c(1)(b)(ii), Part IV, Manual for Courts–Martial, 1984 (emphasis added). Such an assault is within the clearly delineated scope of Article 128. *See generally United States v. Joseph, supra* (Wiss, J., concurring in the result).

25. Though not readily apparent from the majority opinion, appellant's principal contention in this Court is that culpable negligence requires that *he* be aware of the risk he was creating—that is, measured by a subjective standard. From that, he argues that the providence inquiry does not reflect this personal knowledge.

26. Concisely stated, appellant's position is not the law. Instead, the measure of culpable negligence is an objective one—whether a reasonable person would realize the risk. *United States v. Brown*, 22 MJ 448, 450 (CMA 1986). In that light, the providence inquiry not only fails to reflect a "substantial basis" in law and fact for questioning the guilty plea, *see United States v. Prater*, 32 MJ 433, 437 (CMA 1991), it also affirmatively supports the plea.