UNITED STATES, Appellee,

v.

**Julius K. ADAMS, Jr., Sergeant First Class, U.S. Army, Appellant.**

No. 65,467.
CM 8900466.

U.S. Court of Military Appeals.

Argued March 14, 1991.

Decided Sept. 26, 1991.

For Appellant: *Captain Michael P. Moran* (argued); *Lieutenant Colonel Russell S. Estey* and *Captain James Kevin Lovejoy* (on brief); *Colonel Robert B. Kirby.*

For Appellee: *Major Maria C. Fernandez* (argued); *Colonel Alfred F. Arquilla* and *Lieutenant Colonel Daniel J. Dell'Orto* (on brief).

*Opinion of the Court*

EVERETT, Senior Judge:

Before a general court-martial composed of a military judge sitting alone, Adams pleaded guilty to one specification each of carnal knowledge and false swearing, violations of Articles 120 and 134, Uniform Code of Military Justice, 10 USC §§ 920 and 934, respectively. Thereafter, the judge sentenced Adams to a bad-conduct discharge, confinement and forfeiture of $250.00 pay per month for 40 months, and reduction to the lowest enlisted grade. Pursuant to a pretrial agreement, the convening authority reduced the term of confinement to 3 years but otherwise approved the sentence, and the Court of Military Review affirmed. 30 MJ 1035 (1990).

We granted Adams' petition for review to determine whether his pleas of guilty to carnal knowledge were provident. 32 MJ 229 (1990). We conclude that they were not.

I

■ The providence inquiry disclosed that Adams went home after a long duty-day and, after consuming some beer, fell asleep in his bed. His wife was at work at the time. His niece, who had resided in the Adams' home for some years, entered the bedroom and slipped into his bed. Intending to engage him in sexual relations, she fondled and aroused Adams. In a state of semiawareness, Adams believed that his wife was in their bed with him and was

initiating sex. As he usually did with his wife under such circumstances, he engaged in intercourse. At the moment of his climax, he heard his partner say, "Dad," a name his niece frequently called Adams.[1]

There was some additional colloquy concerning Adams' actual knowledge of his partner's identity. For instance, he acknowledged thinking at some point that there was something peculiar about his "wife's" body structure and hair; but he insisted that, in the midst of intercourse, he really "did not pay attention to it." He persisted in his assertion that he believed his consort to be his wife until the moment she said, "Dad"—at which point he immediately stopped.

Based on this and other discussions between Adams and the military judge, the Court of Military Review found—correctly, we believe, on the basis of the entire colloquy—that the inquiry reasonably raised an unresolved issue of mistake of fact. *Id.* at 1036 [2]. Accordingly, the real question before the Court of Military Review, as it is before this Court, was whether such a mistake as to a sex partner's identity is a legal defense to carnal knowledge. If so, Adams' adamant insistence in this regard requires that his pleas be set aside and that factfinders decide the truth of his claim. *See* Art. 45(a), UCMJ, 10 USC § 845(a).

**II**

Military jurisprudence—like that of other jurisdictions—has long recognized that a reasonable and honest mistake (or as some writers would put it—"ignorance") as to a material fact is a defense to criminal activity.[3] *See* RCM 916(j), Manual for Courts–Martial, United States, 1984; § 2.04, *Model Penal Code and Commentaries* 267, 269 (1985). *See also Morissette v. United States*, 342 U.S. 246, 251, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952) (in criminal law, there generally is guilt only where accused intends to do prohibited act); *United States v. Jefferson*, 13 MJ 779, 780 n.* (ACMR 1982) (mistake-of-fact defense implies act "would have been lawful" if facts had been as "reasonably believed").

■ The Government points out, however, that a mistaken belief of the *age* of the victim is not a defense in a prosecution for carnal knowledge. *See United States v. Carr*, 18 MJ 297, 301 (CMA 1984), citing para. 199*b*, Manual for Courts–Martial, United States, 1969 (Revised edition); *accord* RCM 916(j), Discussion, and paragraph 45c(2), Part IV, 1984 Manual, *supra*.[4] Accordingly, the Government argues—and the Court of Military Review opined—that, by analogy, a mistaken belief as to the partner's *identity* should not be a defense to carnal knowledge, either. 30 MJ at 1037.

1. Indeed, subsequent to this incident, appellant adopted his niece.

2. Although the opinion at the outset somewhat inconsistently reads that "the defense mistake [sic] was not raised factually," *id.* at 1035, the opinion in its entirety leaves no doubt of the court's contrary view.

3. Writing in 1886, Colonel Winthrop noted that ignorance of a fact could be a defense in a court-martial. W. Winthrop, *Military Law and Precedents* 437 (Washington, D.C., 1886), 291 (2d ed. 1920 Reprint). The various Manuals for Courts–Martial have recognized the mistake-of-fact defense at least as far back as the 1921 edition. *See* para. 283, Manual for Courts–Martial, U.S. Army, 1921, at 224.

4. Interestingly, some statutes of comparatively recent vintage have abandoned this strict liability as to age under some circumstances. *See,*

*e.g.,* 18-USC § 2243(c)(1)(1986) (Where victim is at least 12 years old but not yet 16, it is a defense that the accused "reasonably believed that the other person had attained the age of 16 years"—a defense which the accused "must establish by a preponderance of the evidence."); Wash. Rev.Code § 9A.44.030(2) (1979) (based on declaration of the victim); Mo. Rev. Stat. § 566.020.3 (1979) (if child is 14 or 15 years old). Perhaps these statutes reflect the lawmakers' acknowledgment that, under some circumstances, it is entirely reasonable for a person to believe erroneously that a girl has reached the age of 16 years. In a jurisdiction like ours, in which mere fornication is not criminal conduct, such an approach is entirely consistent with the general theory of criminal liability, that is: An honest and reasonable mistake of fact will absolve the actor of culpability if the fact as he believed it to be would have made his act no crime at all. *See* 33 MJ at 301.

This analogy, however, fails to notice a critical distinction, long recognized in the corpus of law involving sex offenses, between a mistake of fact that goes to *degree* of legal and moral turpitude, on the one hand, and a mistake of fact that goes to whether the act was legally or morally wrong *at all*, on the other hand.[5]

The principal rationale for imposing strict liability regarding age of the carnal-knowledge victim is that, historically

> the defendant, by engaging in an act of sexual intercourse [with a woman not his wife] is committing either an illegal or an immoral act, and that his intent to commit ... [carnal knowledge] is derived from his intent to commit the lesser moral or legal wrong. Under this theory, since the defendant is aware that he is committing fornication, his mistake of age goes only to the degree, but not the presence, of wrong. Therefore, his intent to commit fornication may be substituted for the intent to have sexual intercourse with a female under the statutory age.

6 Am.Jur. Proof of Facts 2d, *Mistake of Age—Statutory Rape* § 2 at 70 (1975). To clarify the point, we note these comments by Professor Perkins:

> Although suggested at times that the result in such cases is because these are offenses which do not have the normal mens-rea requirement, this is quite unsound and would lead to very unsatisfactory results in certain cases such as those involving an *innocent* mistake of fact. The latter problem has arisen most frequently in the adultery cases. If the intercourse is obviously illicit, the mistaken belief in the unmarried status of the paramour is not an *innocent* mistake. "In such a case there is a measure of wrong in the act as the defendant under-

stands it and his ignorance of the fact that makes it a greater wrong will not relieve him from the legal penalty." On the other hand, despite some indication to the contrary, it is clearly established that if the intercourse follows a marriage ceremony entered into in good faith, with no thought or reason to believe that the other party is already married, it does not constitute the crime of adultery if it does not occur after the mistake has been discovered. As said *obiter* in a reference to intercourse resulting from a mistake as to the identity of the person: "In such a case there is no offense for none was intended, either in law or in morals."

R. Perkins and R. Boyce, *Criminal Law* 918–19 (3d ed., 1982) (footnotes omitted).

Here Adams told the military judge that he was asleep when a female began to arouse him. He was in his own marital bed; it was dark in the room; and from his statement it is clear that it was not unusual for his wife to initiate sex. As he stated:

> I did what I usually do with my wife in situations like that when it occurs, that I would just roll over and have intercourse with my wife.

In this circumstance, Adams—if believed—was not simply protesting the *degree* of his moral and legal wrong; rather, he was asserting that he did not believe he was doing *anything at all* wrong.

This statement was substantially inconsistent with guilt, as Adams "held ... an incorrect belief of the true circumstances...." RCM 916(j). While there was some discussion between Adams and the military judge concerning this matter, the judge failed to explain the defense and did not ascertain whether Adams was as-

---

**5.** But cf. *United States v. Carr,* 18 MJ 297, 301 (CMA 1984). There, the Government had argued that the accused's claim of mistake as to consent of his rape victim was not a defense because, even if true, the accused knew he nonetheless was committing a crime—*viz.,* adultery with his married victim. Pointing to the great disparity in authorized sentences for rape and adultery, infrequency of adultery prosecutions, and the all-but-ignored treatment in the Manual of adultery as a crime, this Court concluded that, "[w]hatever the merits of this position [of the Government] in the abstract," it "would be unreasonable" "to let guilt or innocence of rape hinge on the presence or absence of adultery."

serting it. Thus, he failed to establish the providence of the pleas on the record. RCM 910(e), Discussion; *cf. United States v. Davenport*, 9 MJ 364, 367 (CMA 1980).

Before us the Government has argued that, even if Adams' answers during the providence inquiry raised a defense, it should be rejected as not being both honest *and reasonable. See United States v. Brown*, 22 MJ 448, 451 (CMA 1986); RCM 916(j). However, Adams' version is not so outlandish as to be absurd. *See A Mistake of Wife Defense?*, DAD Notes, The Army Lawyer 21 n. 8 (Dept. of the Army Pamphlet 27–50–213 (Sept.1990)). Under such circumstances, neither the military judge nor an appellate court should reject his claim as unreasonable as a matter of law. Instead, that evaluation is one for the trier of fact. *See United States v. Williams*, 21 MJ 360, 362 (CMA 1986).

### III

The decision of the United States Army Court of Military Review is reversed as to the specification of Charge I and Charge I and the sentence. The findings of guilty thereon and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered. If a rehearing on Charge I is deemed impracticable, a rehearing on sentence based on specification 2 of Charge II may be ordered.

Judge COX concurs.

SULLIVAN, Chief Judge (dissenting):

This is a guilty-plea case. I find that the providence inquiry as a whole supports the findings of guilty, and I would affirm. *United States v. Clark*, 28 MJ 401, 406–07 (CMA 1989). Accordingly, I need not reach the mistake-of-fact issue decided by the majority.