UNITED STATES

v.

**Technical Sergeant Franklin T. WILSON, FR248–98–7161 United States Air Force.**

**ACM 30345.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 8 Oct. 1992.

Decided 22 Nov. 1994.

Appellate Counsel for Appellant: Colonel Terry J. Woodhouse, Colonel Jay L. Cohen, and Captain Ursula P. Moul.

Appellate Counsel for the United States: Colonel Jeffery T. Infelise, Colonel Thomas E. Schlegel, and Captain Jane M.E. Peterson.

Before DIXON, YOUNG, and BECKER, Appellate Military Judges.

## OPINION OF THE COURT

BECKER, Judge:

A military judge, sitting as a general court-martial, accepted the appellant's guilty pleas and convicted him of three specifications of cocaine use and one specification of cocaine possession, all in violation of Article 112a, UCMJ.[1] The military judge also convicted the appellant, despite his pleas, of two specifications of communicating threats to injure two agents of the Air Force Office of Special Investigations (AFOSI), in violation of Article 134, UCMJ.[2] Appellant was sentenced to a bad-conduct discharge, 14 months confinement, and reduction to E–1. Appellant asserts 12 assignments of error, among them a contention that his pleas of guilty to cocaine use were improvident. We agree, in part. We set aside one of his convictions, dismiss that charge and specification, and reassess his sentence.

---

1. 10 U.S.C. § 912a (1988).

2. 10 U.S.C. § 934 (1988). The military judge acquitted the accused of one specification of resisting apprehension and one specification of obstruction of justice, punishable under Articles 95

## I. BACKGROUND

Appellant pled guilty to Charge I and its three specifications, which alleged two uses of cocaine occurring, respectively, between 25 and 31 May 1992 and between 12 and 15 June 1992, and cocaine possession on 15 June 1992. He also pled guilty to Additional Charge I, which (after exceptions and substitutions by the accused's plea) alleged cocaine use at divers times between 14 February 1991 and 1 February 1992. During the *Care*[3] inquiry, the appellant told the military judge that he became addicted to "crack" cocaine while working as a drug informant for the Sumter County, South Carolina, Sheriff's Department. He said his addiction started in February 1991, when he was forced to use the drug by a supplier to prove that he was not an informer. According to the appellant, ". . . ever since it was like, that one hit, it was like gone. Going on. Couldn't stop."

In the portion of the *Care* inquiry covering Additional Charge I and its specification, the appellant said he carried on his activities as a police informant and continued to use "crack" cocaine during contacts with drug suppliers. Although admitting his addiction, the appellant also claimed that his cocaine use was necessary to protect his cover. He complained that he tried to persuade his police handlers to let him play a non-using dealer, but they refused:

> You know, I kept trying to tell Sumter County, look here, send me in there at $100, $50, you know, a $200, maybe an eight ball, then I could play the part of a dealer, you see. But I'd go in there [and] I had to play the part of an addict and get the rock for them and that's what I did. I, you know, I was playing the part of an addict and I turned into a real addict doing it.

The military judge asked the appellant if anyone from the Sheriff's Department had

---

(10 U.S.C. § 895 (1988)) and 134, UCMJ, respectively.

3. *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969).

authorized him to use cocaine. Appellant replied "[t]hey did not verbally authorize me, but I felt that they knew I was using cocaine in there during that time to get the job done. . . . I told them if that's what it takes to get 'em and you know, get the job done. . . ." When asked if he used the cocaine because he wanted it due to his addiction, the appellant said "I used it because I was mad, and I wanted to do something, and I wanted to find the drugs. I wanted to put some of these dealers behind jail, behind cells. I used it because of I got addicted to it. . . ." Despite these statements, the appellant conceded his use of cocaine under these circumstances had been unjustified and wrongful, even after explanations from the military judge that "wrongful" did not include situations where he had acted as an undercover police source and used cocaine to protect his cover.

At the close of the military judge's initial inquiry into the specification of Additional Charge I, the trial counsel expressed that she was "just a little bit shaky" on the providence of the accused's plea. In response, the military judge continued the inquiry:

MJ: Can we go over that just one time again, Sergeant Wilson? The additional charge, and this is the period between February '91 and February '92. Now this is the period of time when you indicated to me that at least on some occasions you were trying to assist the Sumter County Sheriff's Department, right?

ACC: Yes, sir.

MJ: Now, were there occasions, you know, more than one, some occasions during this year period of time where you were not involved in providing information to them, but you just on your own obtained and used cocaine?

ACC: Right.

MJ: There were?

ACC: Yes, sir, me and Andrews[4] did.

MJ: You knew what you were doing?

ACC: Yes, sir.

MJ: And you knew what you were using was cocaine?

ACC: Yes, sir.

MJ: Okay, so on those occasions, again, as I defined that term to you, do you feel your use was wrongful? In other words, it was without legal justification or authorization?

ACC: Yes, sir.

MJ: Satisfactory, Capt Homolka?

TC: Yes, sir. . . .

However, this portion of the inquiry must be considered along with an earlier exchange which covered the same ground:

MJ: Okay. So there were—were there occasions during this period that you were—where you used cocaine that you were not also—it was not also an instant [sic] where specifically you were seeking information to provide for the county sheriff's department?

ACC: Well, every time I used it and I would find ways of—I was addicted to it and I used my addiction to find information.

MJ: Okay, well—

ACC: And if—okay, say like I wanted the drug. I had to have the drug every three or four days. I had to have it there, you know. I was like my body was hurting inside. But during that addiction time when I found a new source to get the drug from I would turn it over to the Sumter County.

MJ: You'd give them that information?

ACC: I'd give them that information.

MJ: But were you going out to get the drug and use it because of your addiction?

ACC: Yes, sir.

Turning to the instances of cocaine use and possession alleged in the specifications of Charge I to have occurred in May and June of 1992, the appellant expressly conceded he was not working in any law enforcement capacity at the time of these offenses. Appellant said that he needed the cocaine, and took the opportunities to use and possess the drug presented to him by the AFOSI infor-

---

4. The appellant described "Andrews" as a friend who also worked as a police drug informant.

mant and undercover agents.[5] However, the appellant maintained that his addiction to "crack" had begun with his work as a drug informant for the Sumter County Sheriff's Department.

## II. DISCUSSION

 This Court will not question a military judge's acceptance of guilty pleas unless the record reveals a substantial basis in law and fact for doing so. *United States v. Prater*, 32 M.J. 433, 436 (C.M.A.1991). The mere possibility of a defense does not, of itself, provide such a basis. *United States v. Clark*, 28 M.J. 401, 406–407 (C.M.A.1989). However, in evaluating the providence of guilty pleas, we must accept an accused's statements at face value. *United States v. Jemmings*, 1 M.J. 414, 418 (C.M.A.1976). If an accused's account of events is inconsistent with guilt, the plea must be rejected. *United States v. Adams*, 33 M.J. 300, 303 (C.M.A. 1991).

 Applying these principles, the military judge's inquiry does not establish the providence of the appellant's guilty pleas to Additional Charge I and its specification. Drug use, which would otherwise be illegal, is not wrongful if done by a law enforcement agent in furtherance of legitimate drug enforcement operations. *United States v. Flannigan*, 31 M.J. 240 (C.M.A.1990). This is so even if the agent has been trained in drug use "simulation" and directed to avoid situations where he may have to "simulate" use, but nonetheless actually ingests the drug. *Id.* According to the appellant's statements, his police handlers implicitly condoned his cocaine use as necessary to "get the job done." However, even if there had been an explicit instruction not to use drugs, the appellant would still have been potentially entitled to this defense. Although the appellant admitted finding sources of "crack" and using it without direction from the Sumter County Sheriff's Department, it is clear that he still considered this part and parcel of his activities as a drug informant—"I used my addiction to find information." In the face of these statements, we do not find the appellant's concessions of "wrongfulness," made in response to the military judge's leading questions, to be persuasive. Whether this drug use was in furtherance of legitimate law enforcement operations was a question for the trier of fact, and could not be resolved by the military judge as consistent with the appellant's guilty plea.

 We do not reach the same conclusion regarding the cocaine uses and possession reflected in the specifications of Charge I. These occurred several months after the divers uses alleged by the specification of Additional Charge I and, by the appellant's express admission, some time after his association with the Sumter County Sheriff had ended. Although the appellant claimed these offenses occurred because of an addiction traceable to his work as a police operative, this fact alone would not raise a defense. We decline to extend the holding in *Flannigan* to excuse this manner of drug abuse.

## III. DECISION

 We set aside the appellant's convictions of Additional Charge I and its specification and, in the interest of judicial economy, they will be dismissed. We must now try to decide what the sentence would have been absent those convictions. *United States v. Sales*, 22 M.J. 305, 307 (C.M.A.1986). If we can determine what sentence probably would have been adjudged, we may reassess it; otherwise, we must return the case for a rehearing. *United States v. Jones*, 39 M.J. 315, 317 (C.M.A.1994); *United States v. Peoples*, 29 M.J. 426 (C.M.A.1990). If we can determine what sentence would probably have been adjudged, we then must decide whether the sentence, as reassessed, is nonetheless appropriate. *Peoples*, 29 M.J. at 428; *Sales*, 22 M.J. at 308.

 After weighing the improper cocaine use conviction against the remaining convictions, we believe we can reassess the sentence. In light of the serious misconduct of which the appellant remains convicted, and the aggravating circumstances (to include the fact the appellant brought his young son to

---

5. According to prosecution evidence, AFOSI agents got wind of the appellant's drug involvement and successfully targeted him for a "reverse sting" operation.

the "reverse sting" cocaine buy of 15 June 1992), we believe the appellant would have received at least 12 months confinement in addition to the other adjudged sentence elements. Consequently, we will reduce the confinement portion of the sentence from 14 to 12 months. However, we note that the appellant has already served the full term of confinement, as adjudged. In order to provide a more meaningful remedy, we will also set aside part of the grade reduction portion of the sentence, and approve only a reduction to E–2. We have given individualized consideration to the seriousness of the offenses, the character and military performance of the appellant, and all circumstances documented in the record of trial. *United States v. Snelling*, 14 M.J. 267 (C.M.A.1982). We find the sentence, as reassessed, to be appropriate.

We resolve the remaining assignments of error against the appellant. We set aside the findings of guilt to the specification of Additional Charge I and Additional Charge I, which we hereby dismiss. The remaining convictions and that portion of the sentence which includes a bad-conduct discharge, confinement for 12 months, and reduction to E–2 are correct in law and fact. Accordingly, they are

AFFIRMED.

Chief Judge DIXON and Judge YOUNG concur.