UNITED STATES

v.

David A. GAINES, Fireman Controlman
Second Class (E–5), U.S. Navy.

NMCCA 200300828.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 3 May 2002.

Decided 29 July 2005.

Capt James D. Valentine, USMC, Appellate Defense Counsel.

Lt Craig Poulson, JAGC, USNR, Appellate Government Counsel.

Before DORMAN, Chief Judge, PRICE, Senior Judge, and HARRIS, Appellate Military Judge.

DORMAN, Chief Judge:

The appellant was tried before a general court-martial composed of a military judge, sitting alone. Contrary to his pleas, the military judge convicted the appellant of indecently assaulting two adult females, on different occasions. As a result, the appellant stands convicted of violating Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The adjudged and approved sentence consists of confinement for 2 years, reduction to pay grade E–1, and a bad-conduct discharge. In taking action on 19 February 2003, the convening authority remitted all confinement in excess of 12 months. This action was taken to comply with an agreement reached between the appellant and the convening authority midway through the appellant's court-martial. Additionally, as a matter of clemency, the convening authority waived automatic forfeitures of pay for a period of 6 months from the date of his action. The record is silent as to whether the appellant benefited from this clemency.

The appellant has raised five assignments of error,[1] the first four of which will be addressed below. We have reviewed the record of trial, the appellant's brief and assignments of error, the Government's answer, and the appellant's reply. We have also considered the excellent oral arguments presented by appellate counsel on 11 May 2005. Based on that review, we conclude that corrective action is required. Following our corrective action, we conclude that the findings and sentence are correct in law and fact, and that no error remains that is materially prejudicial to the substantial rights of the appellant. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

### Facts

The appellant stands convicted of two indecent assaults. One assault was committed against a civilian female, Ms. S, on 25 November 2000, in the off-base house of one of the appellant's girlfriends. The other assault was committed against Seaman Apprentice (SA) P on 3 March 2001, in the off-base house in which another of the appellant's girlfriends was then living.

Ms. S testified that she had seen the appellant at Rumors, an on-base bar in Dahlgren, VA, the evening before the assault. She went there to meet her friend, Ms. D, who worked as a bartender at Rumors. Ms. S and Ms. D were best friends, and Ms. S planned on spending the night at Ms. D's house that evening. After Rumors closed, the two of them went to Ms. D's house. Prior to that evening, Ms. D had been dating the appellant. Shortly after Ms. S and Ms. D arrived at her house, the appellant arrived, letting himself in. He walked into Ms. D's bedroom unannounced. Upon the appellant's arrival, Ms. S retreated, pillow and blankets in hand, to sleep on the living room sofa.

Ms. S testified that she awoke early the next morning with the appellant's finger in her vagina. She quickly got up and went into Ms. D's room and woke her up. Ms. D testified that when Ms. S came into her room she was screaming and crying, saying the appellant's name over and over again. After Ms. D shook Ms. S, Ms. S told her what the appellant had done. Ms. D got up and left the room in search of the appellant. Ms. S

1. I. THE EQUAL PROTECTION COMPONENT OF FIFTH AMENDMENT DUE PROCESS WAS VIOLATED BELOW AND IS BEING FURTHER VIOLATED NOW BECAUSE THE MILITARY JUDGES AND THE JUDGES OF THIS COURT SERVE WITHOUT THE PROTECTION OF A FIXED TERM OF OFFICE, WHEREAS THOSE IN THE ARMY ENJOY SUCH PROTECTION BY REGULATION[.]

II. THE GOVERNMENT FAILED TO PROVE APPELLANT'S GUILT BEYOND A REASONABLE DOUBT.

III. A SENTENCE THAT INCLUDES CONFINEMENT FOR TWO YEARS, REDUCTION TO E–1, AND A BAD[-]CONDUCT DISCHARGE IS INAP[P]ROPRIATELY SEVERE IN LIGHT OF THE NATURE OF THE OFFENSES.

IV. THIS COURT SHOULD REMEDY THE UNNECESSARILY LENGTHY POST–TRIAL DELAY IN THIS CASE BY SETTING ASIDE THE ADJUDGED BAD–CONDUCT DISCHARGE.

V. THE MILITARY JUDGE ERRED WHEN HE FAILED [TO] SUP[P]RESS THE STATEMENTS REGARDING MS. [S].

did not report the incident to the police for several days.

The appellant testified that he spent the night with Ms. D and that they had sexual relations that night. The next morning, as he was leaving, he woke Ms. S to ask her about a cigarette lighter she had borrowed. He testified that when he woke her, she pulled him down towards her and started kissing him. She soon stopped and commented that he was not who she thought he was. He believed Ms. S was playing "head games" with him. He testified that he terminated the interchange with Ms. S by grabbing her buttocks and telling her that he would not tell Ms. D.

On the evening of 3 March 2001, SA P was at Rumors with Seaman (SN) K. SA P was 19 years old. SN K was 35 years old. SA P was both shorter and heavier than SN K. The appellant was also at Rumors, and he talked with them that evening. SA P and SN K left Rumors around 2300, eventually ending up at the off-base house where SN K was soon to be living. Along the way, they stopped at a convenience store and purchased some alcoholic beverages. Although SA P was not 21, she consumed some of those beverages once they got to the house. Eventually, the appellant and another Sailor showed up at the house. Two other Sailors arrived at the house some time later.

The house belonged to a petty officer, from whom SN K was going to be renting a room. Previously, SN K had "house-sat" for the petty officer. During the periods of time that she house-sat, the appellant would visit SN K there. During those visits the appellant and SN K engaged in sexual relations. During the time in which SN K house-sat, there was only one bedroom in the house. When the appellant and SN K engaged in sexual relations, they did so in that bedroom. The petty officer testified that when the lights are turned off in that bedroom at night, it becomes very dark in that room. SN K was in the process of moving into the house, and a second bedroom had been set up for her. The second bedroom was in a room that had previously been used for storage. The appellant was not aware that SN K had a bedroom of her own.

SA P knew the appellant because she had worked with him. After the appellant arrived at the house, he, SN K, and SA P sat on the sofa watching television in the living room. All were drinking, and the appellant testified that he had been drinking before he arrived. While on the couch, the appellant was whispering in SN K's ear, and SN K testified that she was planning on having sex with the appellant that evening. SN K left the living room and went to bed, leaving the appellant, SA P, and the other Sailors in the living room. SA P was lying on the couch with her legs in the appellant's lap. Eventually, she got up and went to bed. She testified that the appellant followed her to the bedroom, but that he did not enter the room. SA P went to the bedroom in which SN K and the accused had previously engaged in sexual relations, laid down on the bed and quickly fell asleep.

The appellant testified that he stayed in the living room for a while and did not follow SA P to the bedroom. Later, however, the appellant got up to go be with SN K, going to the bedroom where he had previously stayed with her. The appellant went in and closed the door. He began to massage the feet of the woman who was on the bed, and eventually touched her legs and pelvic area. This contact woke SA P. The appellant testified that he immediately apologized, telling SA P that he thought she was SN K. SA P became upset and went into the room where SN K was staying. She testified that she told SN K that the appellant "had gone into the wrong room." Record at 256. While the appellant acknowledged that he touched SA P, he also testified that he believed that he was with SN K. Contributing to his mistake were the facts that he had quite a bit to drink, that the room was very dark, and that he was not aware that SN K had her own room.

During the appellant's case-in-chief, he presented evidence of his good military character through the testimony of four witnesses and the stipulated testimony of another. In fact, the appellant had previously been named "Junior Sailor of the Quarter" and "Junior Sailor of the Year." As of the date of his court-martial, the appellant had been on

active duty for 8 years. During that period of time, he had not been subject to any disciplinary actions.

## Constitutional Due Process

■ The appellant's first assignment of error asserts that he has been denied the equal protection of the law due to him under the Due Process Clause of the Fifth Amendment to the United States Constitution. The appellant concedes that there is no fundamental due process requirement that military judges be provided with fixed terms of office. He argues, however, that because the Army and Coast Guard have provided for fixed terms and the Navy has not, this alone deprived him of equal protection. The appellant avers that this court should set aside his conviction and sentence with leave to conduct further proceedings presided over by a military trial judge who enjoys a fixed term of office. We disagree.

"No person shall be ... deprived of life, liberty, or property without due process of law...." U.S. Const. amend. V. Our superior court has held that the equal protection component of the Fifth Amendment's Due Process Clause is applicable to the military system of criminal justice. *See, e.g., United States v. Robinson,* 39 M.J. 88, 89 (C.M.A. 1994); *United States v. Tuggle,* 34 M.J. 89, 91–92 (C.M.A.1992); *United States v. Santiago–Davila,* 26 M.J. 380, 389–90 (C.M.A.1988). Further, the appellant is correct that "[t]he power to 'prescribe regulations providing for the manner in which military judges are detailed,' which Congress conferred on the service secretaries, Article 26(a), UCMJ, does not preempt the President's authority ... to require that military judges have the protection of fixed terms of office." Appellant's Brief of 25 Jun 2004 at 7–8.

The Supreme Court has held, however, that the lack of a fixed term of office for military judges does not violate either the Appointments Clause or the Due Process Clause of the Fifth Amendment. *Weiss v. United States,* 510 U.S. 163, 176–81, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). Further, the Court of Appeals for the Armed Forces has also concluded that the differences between Article III courts and military courts do not deprive servicemembers of equal protection under the Fifth Amendment because an appellant is entitled under Article 67a, UCMJ, to seek review by the Supreme Court, which is an Article III court. *United States v. Loving,* 41 M.J. 213, 295–96 (C.A.A.F.1994), *aff'd,* 517 U.S. 748, 116 S.Ct. 1737, 135 L.Ed.2d 36 (1996).

Congress has sanctioned distinctions between the services in authorizing each service secretary to prescribe regulations for the manner in which military judges are detailed. Art. 26(a), UCMJ. Congress has also sanctioned distinctions between the services in authorizing each Judge Advocate General to establish a Court of Criminal Appeals and to prescribe uniform rules of procedure for their respective Court of Criminal Appeals. Art. 66(a) and 66(f), UCMJ. "Congress has never required such uniformity among the services, and it has consistently authorized the Secretary of each armed force to promulgate regulations to meet special needs of his service, as determined by him." *United States v. Hoesing,* 5 M.J. 355, 358 (C.M.A.1978).

We, therefore, conclude that the assignment of error has no merit. Accordingly, we decline to grant relief.

## Sufficiency of the Evidence

In his second assignment of error, the appellant argues that the Government failed to establish his guilt beyond a reasonable doubt. He challenges both the legal and factual sufficiency of the evidence.

The test for legal sufficiency is well-known. It requires this court to review the evidence in the light most favorable to the Government. In doing so, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the evidence is legally sufficient. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324, 324–25 (C.M.A.1987). Applying that standard, we have no difficulty concluding that the evidence of record is legally sufficient to support the convictions for both indecent assaults.

The test for factual sufficiency, however, is more favorable to the appellant. It requires this court to be convinced of the appellant's

guilt beyond a reasonable doubt, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses. *Turner*, 25 M.J. at 325. Proof beyond a reasonable doubt, however, does not mean the evidence must be free from conflict. *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R.1986)(citing *United States v. Steward*, 18 M.J. 506 (A.F.C.M.R. 1984)). "[T]he factfinders may believe one part of a witness' testimony and disbelieve another." *United States v. Harris*, 8 M.J. 52, 59 (C.M.A.1979). So too may we. In resolving the question of factual sufficiency, we have carefully reviewed the record of trial, but have given no deference to the factual determinations made at the trial level. *See United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002). Based on that review, we are convinced beyond a reasonable doubt of the appellant's indecent assault upon Ms. S, but we are not convinced of his guilt concerning the alleged indecent assault upon SA P.

In order to convict the appellant of the offense of indecent assault the Government was required to prove that the appellant assaulted a person who was not his spouse, that his acts were done to gratify his lust or sexual desires, and that under the circumstances, the appellant's conduct was prejudicial to good order and discipline or was of a nature to bring discredit upon the armed forces. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.), Part IV, ¶ 63b. Since indecent assault necessarily includes a battery, it is appropriate to also consider the elements for an assault consummated by a battery. There are but two elements for that offense: first, that the appellant did bodily harm to another, and second, that the harm was done with unlawful force or violence. *Id.* at ¶ 54b(2).

█ We have examined the evidence of the appellant's indecent assault upon Ms. S and find that the Government met each and every one of the required elements. Having set forth the facts above, we give credence to the testimony of Ms. S. We have thoroughly considered the appellant's version of what happened between him and Ms. S and do not find his version of the facts to be worthy of belief.

The appellant's argument concerning the Government's proof of the alleged indecent assault upon SA P is more compelling. Further, the Government has an additional burden of proof with respect to that allegation because the appellant has raised an affirmative defense. In addition to proving the elements set out above, the Government also has the burden of disproving the affirmative defense, and it must do so beyond a reasonable doubt. RULE FOR COURTS-MARTIAL 916(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2000 ed.).

█ The facts give rise to the defense of mistake of fact. Specifically, we hold that the mistake of fact in this case goes to the issue of consent. Our superior court has recognized that where an accused mistakenly identifies his sex partner for someone who he believes would normally consent, but in fact the partner was someone else, a mistake of fact defense is raised. *United States v. Adams*, 33 M.J. 300, 301 (C.M.A.1991). In that case, however, the appellant had pled guilty, and the Court of Military Appeals found his statements that raised the defense were inconsistent with his guilty plea. *Id.* at 302–03.

█ A similar rationale applies to the case before us. Had the victim consented to the touching in this case, there would be no indecent assault, because there would be no assault. *See United States v. Rath*, 27 M.J. 600, 607 (A.C.M.R.1988). Thus, if the appellant had an honest and reasonable belief that the person he was touching consented to the touching, he would have a complete defense to the alleged indecent assault upon SA. P. *See United States v. Peterson*, 47 M.J. 231, 234–35 (C.A.A.F.1997). Furthermore, the appellant's asserted belief that he was with SN K rather than SA P—if honest and reasonable—also raises concern as to whether his conduct was service discrediting or prejudicial to good order and discipline. *See Adams*, 33 M.J. at 302; *United States v. Sadler*, 29 M.J. 370, 375 (C.M.A.1990).

Having concluded that the evidence reasonably raises the defense of mistake of fact,

we next turn to the question of whether the Government disproved the defense beyond a reasonable doubt. *See United States v. Pierce,* 40 M.J. 601, 606 (A.C.M.R.1994). We hold that it did not. We reach that conclusion primarily based upon the testimony of both SN K and SA P. Through their testimony it is clear that the appellant had an ongoing sexual relationship with SN K and that he had consummated that relationship in the bedroom wherein SA P was sleeping that night. SN K and the appellant were flirting earlier that evening, and SN K was planning on having sexual relations with the appellant that night. Finally, the appellant expressed concern to SA P that she was not who he thought she was and, when SA P awoke SN K, she told SN K that the appellant had gone into the wrong room. Based upon this evidence, and other evidence of record, we are not convinced beyond a reasonable doubt that the defense of mistake of fact did not exist. Accordingly, we shall take corrective action in our decretal paragraph.

### Speedy Review

In his fourth assignment of error, the appellant asserts that he was denied his right to a speedy post-trial review of his conviction. To assist in our analysis of this assignment of error, we provide the following chronology of the review of the appellant's four-volume, 976–page record of trial.

| | |
|---|---|
| 3 May 02 | Sentence adjudged. |
| 8 Jul 02 | Civilian counsel (CC) inquires regarding status of record of trial. |
| 22 Aug 02 | CC complains of delay in preparation of record of trial. |
| 22 Oct 02 | Record of trial authenticated. |
| 25 Oct 02 | CC requests authenticated record of trial. |
| 6 Nov 02 | CC submits R.C.M. 1105 matters to Convening Authority, including objections to post-trial delay. |
| 31 Jan 03 | Staff Judge Advocate's Recommendation (SJAR) completed. |
| 3 Feb 03 | R.C.M. 1106 response to SJAR, including objection to post-trial delay. |
| 19 Feb 03 | Convening Authority's Action. |
| 22 Apr 03 | Record of trial received at Navy–Marine Corps Appellate Review Activity. |
| 29 Apr 03 | Record of Trial docketed with this court. |
| 25 Jun 04 | Appellant's Brief filed. |
| 3 Nov 04 | Appellant files Motion for Oral Argument |
| 22 Nov 04 | Appellant files Motion to Attach email from appellant, dated 27 Oct 04, pleading for a decision in this case. |
| 21 Dec 04 | Government Answer filed. |
| 31 Jan 05 | Appellant's Reply Brief filed. |
| 10 May 05 | Appellant files Motion to Attach letters from employers concerning status of appellant's security clearance. |
| 11 May 05 | Oral Argument before this court. |

We consider four factors in determining whether post-trial delay violates the appellant's due process rights: (1) the length of the delay, (2) the reasons for the delay, (3) the appellant's assertion of the right to a timely appeal, and (4) prejudice to the appellant. *United States v. Jones,* 61 M.J. 80, 83 (C.A.A.F.2005)(citing *Toohey v. United States,* 60 M.J. 100, 102 (C.A.A.F.2004)). If the length of the delay itself is not unreasonable, there is no need for further inquiry. If, however, we conclude that the length of the delay is "facially unreasonable," we must balance the length of the delay with the other three factors. *Id.* Moreover, in extreme cases, the delay itself may " 'give rise to a strong presumption of evidentiary prejudice....' " *Id.* (quoting *Toohey,* 60 M.J. at 102).

To begin, the delay in this case is not so extreme as to give rise to a presumption of prejudice. In this case, the lengthy record of trial was prepared and the convening authority took action in less than 10 months from the date of trial—contrary to the appellant's assertions. Appellant's Reply Brief of 31 Jan 2005 at 5. We do find, however, that the period of time between the date of trial and authentication of the record is facially unreasonable. No explanation has been provided for this delay. Furthermore, early in the post-trial process the appellant raised the issue of a timely review, to include inquiring about the preparation of the record and receipt of an authenticated copy of the record. The appellant has also presented some evidence of possible prejudice in the letters from two employers. In light of Secretary of

the Navy Instruction (SECNAVINST) 5510.30A (10 Mar 1999), however, we view the appellant's concerns about the delay impacting his ability to obtain a security clearance to be speculative—at best.

We have granted the appellant's motion to attach a letter from his former employer and one from his current employer. The letter from the former employer indicates that employment was terminated because he was unable to obtain a required security clearance. The letter from the current employer also informed the appellant of the requirement to obtain a security clearance. Appendix G of SECNAVINST 5510.30A provides "Adjudication Guidance" to obtain security clearances. While clearance determinations are made on a case by case basis, the appellant's conviction of a sexual offense in and of itself raises a security concern, not only because it is a conviction but also because the conduct "reflects a lack of discretion or judgment." *Id.* at G–2, ¶ 5g and G–10. Thus, unlike the situation in *Jones*, it is not the delay in resolving the appellant's appeal that possibly stands in his way of landing desired employment, it is the conviction itself and the appellant's sexual misconduct.

Under the facts of this case, we hold that the appellant is not entitled to any relief due to the length of time it has taken to complete the review of his case. While we decline to grant specific relief for that delay, we will consider it in our reassessment of the sentence—in determining what sentence is appropriate. *United States v. Tardif,* 57 M.J. 219, 224 (C.A.A.F.2002).

### Sentence Appropriateness

In the appellant's third assignment of error he argues that the adjudged and approved sentence is inappropriately severe. In light of our determination that the evidence is factually insufficient to sustain his conviction for the alleged indecent assault of SA P, we must reassess the sentence in accordance with established principles set out below. Nevertheless, we have given consideration to this assignment of error. In arriving at an appropriate sentence upon reassessment, we have taken into account all the evidence of record, all the clemency matters the appellant submitted to the convening authority, and all the materials he has sub-

mitted to this court. As noted above, we have also considered the post-trial delay in this case.

In conducting our reassessment of the sentence, we have reassessed the sentence as approved by the convening authority. In determining the base line from which to begin reassessment we have considered the holdings of this court in *United States v. Dedert,* 54 M.J. 904, 909 (N.M.Ct.Crim.App. 2001) and *United States v. Olinger,* 45 M.J. 644, 650 (N.M.Ct.Crim.App.1997). Those cases suggest that the base line for reconsideration should be the approved sentence as partially remitted by the convening authority. We hold that those cases are not controlling in this case. We not only distance ourselves from the holding in those cases concerning the effect of remitting a portion of an approved sentence, but we also hold that those cases are limited to situations where the Navy Clemency and Parole Board has taken action on a case prior to our review. Furthermore, we note that in those cases this court did not conduct a reassessment of the sentences.

■ We find it appropriate to begin our reassessment with a base line of 2 years confinement for the following reasons. First, were this court to send the case back for a rehearing on sentencing, court members would be instructed that the maximum sentence they could adjudge includes confinement for 5 years. MCM, Part IV, ¶ 63e; *see also United States v. Gibson,* 43 M.J. 343, 346 n. 3 (C.A.A.F.1995); *United States v. Lawson,* 34 M.J. 38, 40 (C.M.A.1992). Second, the convening authority approved a sentence that included 2 years confinement. The remission of a punitive discharge by the convening authority, or by operation of law when a suspended punitive discharge is remitted at the end of a period of suspension, does not deprive this court of jurisdiction, even though the punitive discharge will never be executed. Similarly, the convening authority determined that a sentence that included 2 years confinement was an appropriate punishment for the appellant's crimes. The fact that the convening authority immediately remitted a portion of the confinement does not mean that he disapproved the portion he remitted, it only means that the appellant will never have to serve confine-

ment in excess of 12 months as a result of his conviction by this court-martial. Finally, in conducting a reassessment of the sentence, the applicable case law focuses on the question of the minimum sentence that the sentencing authority would have adjudged absent the error that necessitates the reassessment. *See United States v. Cook,* 48 M.J. 434, 438 (C.A.A.F.1998); *United States v. Peoples,* 29 M.J. 426, 428 (C.M.A.1990); *United States v. Sales,* 22 M.J. 305, 307–08 (C.M.A.1986).

In conducting our reassessment in this case, we note that of the two specifications of which the appellant was convicted at trial, the indecent assault upon Ms. S was by far the more egregious of the two. We have also considered the facts that the appellant was a petty officer, *see United States v. Thompson,* 22 M.J. 40, 41 (C.M.A.1986), and married, at the time of this offense. Our action below moots the appellant's assignment of error concerning the appropriateness of the sentence.

### Conclusion[2]

We affirm the appellant's conviction of Charge II, and its specification. We set aside, and order dismissed, the appellant's conviction of the Additional Charge and its supporting specification.

As a result of our action on the findings, we have reassessed the sentence in accordance with the principles of *Tardif, Cook, Peoples,* and *Sales.* Upon reassessment of the sentence, we approve only so much of the sentence as extends to confinement for 12 months, reduction to pay-grade E–1, and a bad-conduct discharge. The supplemental promulgating order will reflect the findings and the sentence as modified by this decision.

Senior Judge PRICE and Judge HARRIS concur.

Judge HARRIS participated in the decision prior to detaching from the court.

---

**2.** In his fifth assignment of error the appellant avers that the military judge erred in failing to suppress the appellant's pretrial statement con-

cerning Ms. S. We summarily reject this assignment of error because no such statement was admitted into evidence.