Filed 2/14/25  P. v. Moody CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DWIGHT MOODY,<br><br>        Defendant and Appellant. | A168315<br><br>(Solano County Super.<br>Ct. No. VCR234316) |

Dwight Moody was convicted of willfully committing a lewd or lascivious act on a child under the age of 14 years in violation of Penal Code section 288, subdivision (a).[1]  At trial, he testified that he accidentally touched the victim, C.M., who at the time was around nine years old, and he had no intent to achieve sexual gratification within the meaning of the statute.  He now argues that the trial court erred in failing to instruct the jury on the defense of mistake of fact as to the victim's identity—i.e., he asserts that he mistook C.M. for his adult wife—and that the failure to instruct was prejudicial.  He argues that *United States v. Adams* (C.M.A. 1991) 33 M.J. 300, although not binding on this court, supports the application of the defense here.

---

[1] Undesignated statutory references are to the Penal Code.

The Attorney General argues that a factual mistake as to a victim's identity is not a defense to a section 288 charge, just as a mistake as to a victim's age is no defense, as established in *People v. Olsen* (1984) 36 Cal.3d 638. Although mistake of age is a defense to statutory rape in violation of section 261.5, the Attorney General contends the relevant policy interests do not support the application of the defense where the victim of the crime is, by definition, of "tender years." In addition, the Attorney General argues, even if mistake of fact could be a valid defense to a section 288 charge, the trial court did not err in failing sua sponte to instruct the jury on it. Moody's defense at trial was that the touching occurred inadvertently, not intentionally; a mistake of identity defense would be inconsistent with that defense because it would require him to prove that he intended the touching, but that he believed the person he was touching was his wife.

We need not decide whether a mistaken identity defense could be asserted against a section 288 charge in an appropriate case, because we agree with the Attorney General that such an instruction would have been inconsistent with the defense that Moody offered at trial. We therefore affirm.

## BACKGROUND

Moody was charged with three counts of committing a lewd act upon a child under the age of 14, pursuant to section 288, subdivision (a), and one count of continuous sexual abuse of a child, pursuant to section 288.5, subdivision (a). The counts arose from Moody's interactions with one victim, C.M. The jury found Moody guilty of one count of violating section 288, arising from an incident that occurred when C.M. was nine years old, and acquitted him of the remaining charges.

2

C.M. was close friends with Moody's stepdaughter, A.M., and they would regularly spend the night at each others' houses. C.M. testified that one night when she was nine years old, she, A.M., A.M.'s two younger brothers, and possibly some cousins fell asleep in the living room. C.M. was asleep on the couch and the rest were sleeping on the floor. Moody and A.M.'s mother had left, but then returned later in the evening. C.M. woke up when she heard them return, but then fell back asleep.

C.M. awoke later. The lights were off and she was lying on her back under a blanket. Moody was standing and leaning over her, and had put his hand down her pants, under her underwear, and put his fingers inside her vagina. He was moving his fingers and it was "very[,] very painful." C.M. was moving around, trying to make Moody stop or release his grip. He continued for about a minute. Moody tried to reposition C.M.'s body as she turned away, but then he stopped and walked toward his room.

Years later, C.M. saw Moody at the birthday party of a family friend, Keith Holbert. C.M. hugged others in greeting at the birthday party, but did not hug Moody. Upon being prompted by her mother, C.M. said "hi" to Moody, but had a disgusted look on her face. Afterward, C.M. revealed to her mother that she was unfriendly to Moody because he used to touch her. She then explained her experiences with him.

C.M.'s mother called Moody, who apologized for what he had done to C.M., although he did not specify what he had done. She then called Holbert and Derrick O'Neal, who both knew Moody, and relayed what C.M. had told her. When Holbert and O'Neal separately confronted Moody, he told them both that he was drunk and he thought C.M. was his wife when he touched her.

3

Moody testified that on the night that he touched C.M., she was sleeping on a trundle bed in A.M.'s bedroom, not on the couch in the living room. Moody came home around 1:30 a.m. and saw that the television was on in A.M.'s room. He was buzzed or drunk and went into the room to get the remote for the television to turn it off. The room was illuminated only by the television. The remote was next to C.M., and as he reached for it, he tripped on a shoe and fell across her, with the back of his hand brushing across her vagina on the outside of her clothes.

When asked at trial if he "at all tr[ied] to touch [C.M.] inappropriately," Moody responded, "No. It was an accident." Moody denied telling O'Neal and Holbert that he thought C.M. was his wife when he touched her. In later testimony, he repeated that he never intentionally tried to touch C.M. and he did not act with sexual intent.

## DISCUSSION

" 'We review a claim of instructional error de novo. . . . "[T]he trial court is required to instruct the jury on the general principles of law that are closely and openly connected with the evidence and that are necessary to the jury's understanding of the case." ' " (*People v. Morales* (2021) 69 Cal.App.5th 978, 990.) "In the absence of a request for a particular instruction, a trial court's obligation to instruct on a particular defense arises ' "only if [1] it appears the defendant is relying on such a defense, or [2] if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." ' " (*People v. Dominguez* (2006) 39 Cal.4th 1141, 1148.)

Moody argues that the trial court was required sua sponte to instruct the jury on the defense of mistake of identity because the standard jury instruction for a section 288, subdivision (a) charge "does not adequately

incorporate mistake of fact as to identity." Further, he argues, the defense was legally available and the testimony of Holbert and O'Neal furnished substantial evidence in support of it. The Attorney General argues that the trial court did not have a duty to instruct the jury on a defense that was inconsistent with the defense he advanced at trial, citing *People v. Barton* (1995) 12 Cal.4th 186, 195.

We are unpersuaded by Moody's contention that mistake of identity was consistent with his trial defense that any touching of C.M. was inadvertent. In his trial testimony, Moody directly refuted the factual basis for any mistaken identity defense, repeatedly stating that he had no intention to touch C.M., or to touch his adult wife when he touched C.M., and no intention to engage in touching for the purpose of sexual gratification. Even accepting, therefore, that substantial evidence supported the claimed mistake of identity, that defense was inconsistent with Moody's chosen defense that the charged conduct was accidental, and the trial court had no duty sua sponte to instruct the jury on that defense. (*People v. Dominguez*, *supra*, 39 Cal.4th at p. 1148; see also *People v. Morales*, *supra*, 69 Cal.App.5th at p. 990 [the trial court " 'has a duty to refrain from giving . . . instructions on principles of law that are irrelevant and that would have the effect of confusing the jury' "].)[2]

_____

[2] At oral argument, Moody's counsel acknowledged that Moody's defense at trial—based on his testimony that he inadvertently brushed his hand against C.M. after tripping on a shoe—was factually inconsistent with a defense based on Moody having mistaken C.M. for his wife, but contended that the two defenses were consistent with each other insofar as each would support a finding that he was not criminally liable. If that were all that were required, however, it is hard to see how any two defenses could be "inconsistent." We conclude that the factual inconsistency of the two defenses means that the trial court was not required sua sponte to instruct on mistake

In his reply brief, Moody alternatively argues that the trial court at least had a duty to *inquire* of him whether he wished the jury to be instructed on the defense, citing the Supreme Court's statement that "[i]f it appears to the court . . . that there is substantial evidence that would support a defense inconsistent with that advanced by a defendant, the court should ascertain from the defendant whether he wishes instructions on the alternative theory. Such inquiry will afford assurance that the theory has not been inadvertently overlooked by counsel." (*People v. Sedeno* (1974) 10 Cal.3d 703, 717, fn. 7: see *People v. Breverman* (1998) 19 Cal.4th 142, 157; *People v. Jo* (2017) 15 Cal.App.5th 1128, 1167.) This argument is forfeited because it was not raised in the opening brief. (*People v. Clark* (2016) 63 Cal.4th 522, 552.) Accordingly, we decline to consider it.

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
SIMONDS, J. *

---

of fact, assuming for the sake of argument that a mistaken-identity defense is legally viable.

* Judge of the Superior Court of Sonoma County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.